Laurie AMBRE, Plaintiff,

v.

JOE MADDEN FORD, Ford Motor
Company, and Bank One,
LaGrange, Defendants.

No. 94 C 4389.

United States District Court,
N.D. Illinois,
Eastern Division.

April 20, 1995.

Richard Lawrence Canavan, Norman H. Lehrer, Lehrer, Flaherty & Canavan, Wil-liam B. Thompson, Wheaton, IL, for Laurie Ambre.

Richard M. Karr, Jonathan Paul Geen, Hardt & Stern, P.C., Chicago, IL, for Joe Madden Ford.

Beatriz Maria Olivera, Vigil, Berkley, Schulz and Gordon, P.C., Skokie, IL, for Ford Motor Co.

Peter Alan McElvain, Banc One Illinois Corp., Chicago, IL, for Bank One LaGrange.

### MEMORANDUM OPINION AND ORDER

COAR, District Judge.

On September 26, 1992, plaintiff Laurie Ambre ("Ambre") purchased from defendant Joe Madden Ford ("Madden") a "new" 1992 Ford Explorer. To finance her purchase, Ambre entered into a retail installment contract with Madden; Madden, in turn, assigned the installment contract to Bank One, LaGrange ("Bank One").[1] Under the terms of the installment contract, Bank One was granted a purchase-money security interest in the Explorer.[2] The installment contract also provided that

> "[u]pon the occurrence of any event of default, the holder of this contract shall have the rights and remedies provided by Article 9 of the Illinois Uniform Commercial Code, including, but not by way of limitation, the rights of the holder (a) to take immediate possession of the motor vehicle, with or without judicial process, and for such purpose, to enter upon the premises where it may be located; ...

(Mot. Turnover of Collateral, Exh. A at 2, ¶ 4).

Ambre alleges that shortly after purchase, the Explorer manifested multiple defects which affected its safety, reliability and value. (1 Am.Compl. ¶¶ 11, 15). Consequently, in or about March 1993, Ambre revoked both orally and in writing her acceptance of the

---

1. Bank One, Chicago, NA is the successor by merger with Bank One, LaGrange. *See* Bank One's Answer & Countercl.

2. The contract specifically provided:
 SECURITY INTERESTS: Seller is granted a purchase-money security interest in the motor vehicle described above and all accessions under the Illinois Uniform Commercial Code un-til the Total of Payments and all future indebtedness for taxes, liens, repairs and insurance premiums advanced by holder hereunder are paid in full; Buyer grants assignee the right of set-off or lien on any moneys, credits or other property of Buyer in possession of the Assignee on deposit or otherwise, excepting IRA or similar deposits.

automobile. (*Id.* at ¶ 17). Despite her revocation, Ambre continued to pay her monthly installment payments to Bank One through May 1994; however, she has not made any subsequent payments. (Bank One Answer, at ¶ 4; Pl. Answer to Countercl., at ¶ 5). As of July 28, 1994, the accelerated balance due Bank One under the installment agreement was $11,780.44, exclusive of late fees, collection costs and attorney's fees. (Countercl., at ¶ 6). Ambre presently possesses the automobile.

Bank One moves this court for entry of a order directing Ambre to "turn over" *instanter* the 1992 Explorer to Bank One in accordance with its *in rem* lien for purchase money advanced. Bank One perfected its lien in accordance with the requirements of the Illinois Vehicle Code, *see 625 ILCS 5/3–202,* and is named as the "First Lienholder" on the Certificate of Title of Vehicle issued to Ambre by the Illinois Secretary of State's Office. (Mot. Turnover of Collateral, Exh. B). Bank One's lien is governed by Article 9 of the Illinois Uniform Commercial Code ("Illinois UCC"). Bank One maintains that it has an independent right to enforce its lien regardless of the merits of Ambre's case.

Ambre contends, however, that she has a possessory security interest in the Explorer under Article 2, section 711(3) of the Illinois Uniform Commercial Code.[3] Her security interest represents the amount of principal paid through her monthly installment payments and expenses relating to the inspection, care and custody of the vehicle.[4] Ambre further contends that her section 2–711(3) security interest has priority over Bank One's purchase-money security interest. Ambre's priority argument is based upon the following provision contained in the installment contract:

> Notice: any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder.

This notice, which is known as the "FTC Rule," is included in the contract pursuant to 16 C.F.R. section 433.2.[5]

Ambre argues that the FTC Rule acts as a subordination clause because it placed Bank One, the assignee, on notice that its rights under the agreement are subject to all defenses and/or claims that Ambre has against Madden, the seller. Under this theory, Ambre's security interest under section 2–711(3) would be a "claim" within the meaning of the FTC Notice such that Bank One's purchase-money security interest would be "subject to" that claim.

Ambre's argument fails for three reasons.

 First, the purpose of the FTC Rule was to modify how the holder in due course

---

**3.** This section provides:

> 5/2–711. Buyer's remedies in general—Buyer's security interest in rejected goods
>
> \* \* \* \* \* \*
>
> (3) On rightful rejection or justifiable revocation of acceptance a buyer has a security interest in goods in his possession or control for any payments made on their price and any expenses reasonably incurred in their inspection, receipt, transportation, care and custody and may hold such goods and resell them in like manner as an aggrieved seller (Section 2–706).

810 ILCS 5/2–711(3).

Under this provision, Ambre's ability to claim a security interest depends upon satisfaction of the condition precedent—rightful rejection or justifiable revocation of acceptance. To determine whether Ambre satisfied this condition precedent, the court would have to address the merits of her core claim; namely, that the Explorer was

defective. Ambre did not submit any evidence on this issue, and Bank One has not challenged the basis of her claim to a security interest under section 2–711(3). The court will therefore assume, for the purposes of this motion only, that Ambre justifiably revoked her acceptance and thereby acquired a security interest in the Explorer.

**4.** The amount financed under the retail installment agreement was $18,888.67. As previously established, the accelerated balance due as of July 28, 1994, totalled $11,780.44. Ambre's security interest is approximately $7,108.23, exclusive of inspection, care and custody expenses.

**5.** Section 9–318 of the Illinois UCC likewise provides that the "rights of an assignee are subject to (a) all the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom; ..." *810 ILCS § 5/9–318.*

rule affected consumer purchases of goods or services on credit; it was not intended to modify the priority of security interests in the purchased goods. Under the holder in due course rule, a consumer's obligation to pay for goods or services was not conditioned upon the seller's corresponding duty to perform his promises. *See Guidelines on Trade Regulation Rule Concerning Preservation of Consumers' Claims and Defenses, 41 Fed. Reg. 20,022* (1976) (codified at 16 C.F.R. § 433.1 *et seq.*) (hereinafter "Guidelines"). As such, if a consumer purchased on credit goods that ultimately proved to be defective, his or her obligation to pay the third party creditor for the goods continued despite the seller's failure to perform. The Federal Trade Commission considered this outcome an anomaly because the creditor's right to payment was superior to that of the seller, whose right to payment was conditioned upon performance of its obligations. *See FTC Preservation of Consumers' Claims and Defenses: Final Regulations, Proposed Amendment and Statement of Basis and Purpose, 40 Fed.Reg. 53,507* (1975) (codified at 16 C.F.R. § 433.1 *et seq.*). The FTC adopted its rule to remedy this anomaly and to redistribute the costs occasioned by seller misconduct in credit transactions to the creditor rather than the consumer. *Id.* at 53,-522–23. The FTC Rule "preserves the consumer's rights to assert against the creditor any legally sufficient claim or defense against the seller." *Guidelines, 41 Fed.Reg. at 20,-023.* In this manner, the FTC Rule ensures that the consumer's duty to pay the creditor is not independent of the seller's duty to perform its obligations. Importantly, "the Rule does not create new rights or defenses. The words 'Claims and Defenses' which must appear in the Notice are not given any spe-

cial definition by the Commission. The phrase simply incorporates those things which, as a matter of other applicable law, constitute legally sufficient claims and defenses in a sales transaction." *Id.* at 20,023–24.

▮ The FTC Rule thus does not determine priority of security interests or otherwise subordinate a creditor's purchase-money security interest to the security interest of a buyer created under UCC 2–711(3). Indeed, the FTC's lengthy explanation of its Rule does not mention priority of security interests or otherwise analyze whether the notice has the effect of subordinating a creditor's security interest to a security interest held by a buyer. Since the FTC Rule must be printed in the text of every consumer credit contract, the FTC most certainly would have addressed this issue had the Rule been intended to affect priority of security interests.[6]

▮ Second, the priority of security interests for motor vehicles is determined exclusively by the administrative regulations of the Illinois Vehicle Code. *See 92 Ill.Admin.Code § 1010.130.* This section provides:

Exclusiveness of Lien on Certificate of Title

Liens and security interests in any vehicle for which an Illinois Certificate of Title has been issued, may only be perfected as provided for in the I.V.C. [Illinois Vehicle Code], and any other interests whether sought to be perfected by recording or under the provisions of the Uniform Commercial Code (Ill.Rev.Stat.1981, ch. 26 pars. 1–101 et seq.), as amended, shall not supersede the notation of a lien on a Certificate of Title nor serve as a valid lien or

---

**6.** If, as Ambre contends, the FTC Rule determines priority of security interests, the impact of the Rule on consumer credit transactions would have been revolutionary—since the notice must be printed in every consumer credit contract, the consumer's security interest would always have priority over the creditor's interest. Had the FTC intended such a result, it certainly should have either addressed the priority of security interests within the text of the Rule it adopted or in its explanation of the Rule.

Moreover, from an economic perspective, the interpretation of the FTC Rule advocated by Am-

bre would have a significant, adverse effect on the availability of consumer credit. If the FTC Rule subordinated a creditor's security interest to that held by the buyer, the creditor's right to take possession of collateral securing the loan would be severely restricted. Without access to collateral, the risk borne by the creditor in making a loan would rise exponentially. To compensate for this added risk, a creditor would either have to raise substantially the price of credit or cease making consumer loans.

.

security interest if no lien is noted on such Certificate of Title.

The only lien recorded on the Certificate of Title for Ambre's Ford Explorer is the lien held by Bank One. Although Ambre may have a security interest in the Explorer under section 2–711(3) of the Illinois UCC, it is not enforceable as to Bank One's security interest because it was not recorded on the title certificate. Ambre's UCC-based security interest thus cannot supersede Bank One's perfected security interest.

 Third, even if the priority of the security interests were to be resolved under the provisions of the Illinois UCC, Bank One's security interest would still have priority. As previously established, Ambre's possessory security interest arises under Article 2 of the Illinois UCC while Bank One's security interest arises under Article 9. Under section 9–113 of the Illinois UCC, a security interest arising under Article 2 is "subject to" the provisions of Article 9, with certain limited exceptions.[7] *See 810 ILCS § 5/9–113.* Because Article 2 security interests are subject to Article 9's provisions, Article 9's priority scheme governs. *See 8 W. Hawkland, R. Lord & C. Lewis, Uniform Commercial Code Series § 9–113:04,* at 550–552 (1990); *see also 8 R. Anderson, Uniform Commercial Code § 9–113:5,* at 633–34 (1985) (seller's security interest arising under Article 2 is subordinated to the perfected security interest arising under Article 9). Section 9–312 of Article 9 sets forth the priority scheme as follows:

9–312. Priorities among conflicting security interests in the same collateral

\* \* \* \* \* \*

(4) A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral or its proceeds if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within 20 days thereafter.

*810 ILCS § 5/9–312(4).* Under this section, Bank One's security interest would have priority provided it was perfected within 20 days after Ambre took possession of the Explorer. *See Morris v. Ford Motor Credit Co., Inc.,* 612 So.2d 1212, 1213–14 (Ala.Ct. App.1992) (pursuant to UCC § 9–312(4), creditor's purchase money security interest in plaintiff's vehicle had priority over any security interest the plaintiff/buyer could have asserted under UCC § 2–711(3); however, the buyer did not have a security interest pursuant to § 2–711(3) because she failed to properly revoke her acceptance her vehicle retail installment contract).

Ambre's reliance on *Ford Motor Credit Co. v. Caiazzo,* 387 Pa.Super. 561, 564 A.2d 931 (App.Ct.1989), is misplaced. The facts in *Caiazzo* closely resemble the facts here: plaintiffs revoked acceptance of the automobile they had purchased due to uncorrected defects that substantially impaired the value of the car; Ford Motor Credit, the assignee of plaintiffs' retail installment contract, filed a replevin action based upon its possessory security interest. In response, plaintiffs filed a counterclaim in which they asserted that they too had a possessory security interest in the automobile pursuant to section 2–711(3) of the Uniform Commercial Code. The trial court sustained Ford Motor Credit's demurrer and dismissed the counterclaim on the basis that the claims set forth in the counterclaim were not properly cognizable in a replevin action. On appeal, the appellate court reversed and concluded that a claim to possession based upon a UCC section 2–711(3) lien on the property at issue in the replevin action may properly be set forth as a counterclaim to that action. *Id.* 564 A.2d at 934. Contrary to Ambre's argument, the appellate court decision went no further; it did not

---

7. Section 9–113 provides:

Security interests arising under Article on Sales or under Article on Leases. A security interest arising solely under the Article on Sales (Article 2) or Article on Leases (Article 2A) *is subject to* the provisions of this Article except that to the extent that and so long as the debtor does not have or does not lawfully obtain possession of the goods

(a) no security agreement is necessary to make the security interest enforceable; and

(b) no filing is required to perfect the security interest; and

(c) the rights of the secured party on default by the debtor are governed (i) by the Article on Sales (Article 2) in the case of a security interest arising solely under such Article; ....

*810 ILCS § 5/9–113* (emphasis added).

 

address either the validity of the UCC lien against the motor vehicle collateral or the priority of the UCC lien vis-a-vis the assignee's possessory security interest. It simply reinstated the improvidently dismissed counterclaim. Accordingly, Bank One's perfected purchase-money security interest would have priority under the Illinois UCC.

For these reasons, Bank One is entitled to possession of the 1992 Explorer in accordance with its perfected security interest. Ambre is ordered to deliver the vehicle to a Bank One representative at a mutually agreed upon date, time and place, but in no event later than 5:00 p.m. on Tuesday, April 11, 1995. If Ambre fails to turn over possession of the Explorer prior to the expiration of this deadline, Bank One may promptly move for issuance of a writ of seizure. In that event, Ambre shall be responsible for all costs and legal fees relating to the issuance and enforcement of the writ of seizure.

Finally, under section 2–711(3), Ambre had a right to maintain possession of the Explorer or to resell it.[8] Pursuant to section 9–207, she had a duty to "use reasonable care in the custody and preservation of collateral in his possession." *810 ILCS § 9–207.* If Ambre used the Explorer for any other reason than preservation after she revoked her acceptance, she will have to reimburse Bank One with a reasonable sum commensurate with the amount of her usage, including any depreciation in value resulting therefrom. More importantly, if she used the Explorer for any purpose other than to preserve it, she may have reaccepted the agreement and thereby nullified her revocation and corresponding security interest. Similarly, Ambre may have reaccepted the agreement by continuing to make monthly installment payments on the car loan for approximately fifteen months after she notified Bank One of her revocation of the agreement. If her continuing payments constituted reacceptance, she also would not be able to claim a possessory security interest under section 2–

711(3). The court need not resolve the issue or reacceptance, however, because it has already concluded that Bank One is entitled to possess the Explorer by virtue of its perfected security interest.

WHEREFORE, for the foregoing reasons, Bank One's Motion for Turnover of Collateral is granted. Ambre is ordered to deliver the vehicle to a Bank One representative at a mutually agreed upon date, time and place, but in no event later than 5:00 p.m. on Tuesday, April 11, 1995. If Ambre fails to turn over possession of the Explorer prior to the expiration of this deadline, Bank One may promptly move for issuance of a writ of seizure. In that event, Ambre shall be responsible for all costs and legal fees relating to the issuance and enforcement of the writ of seizure.

---

**8.** The Pennsylvania appellate court in *Caiazzo* raised an interesting issue which it did not decide and is not presently before this court; namely, whether "a purchaser who retains possession of an automobile to protect a security interest following rejection or revocation may have a duty to sell the automobile in the absence of reasonable instructions from the seller, in light of the fact that automobiles decline in value rapidly?" 564 A.2d at 935 n. 2.