755 N.W.2d 583 (2008)
276 Neb. 481
STATE of Nebraska ex rel. Don STENBERG, Attorney General, Appellee and Cross-Appellant,
v.
CONSUMER'S CHOICE FOODS, INC., et al., Appellees, and
Jayco Acceptance Corporation, Appellant and Cross-Appellee.
No. S-07-240.
Supreme Court of Nebraska.
August 29, 2008.
*586 Nichole S. Bogen and James B. Luers, of Wolfe, Snowden, Hurd, Luers & Ahl, L.L.P., Lincoln, for appellant.
Jon Bruning, Attorney General, and Jeffrey A. Gaertig, for appellee State of Nebraska.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
WRIGHT, J.

I. NATURE OF CASE
The State of Nebraska, through its Attorney General, brought this action against Consumer's Choice Foods, Inc.; its principals, Chris Johnson and Jason Johnson; and its sales manager, Kimberly Stigge-Johnson (collectively CCF). The State alleged CCF had violated the Uniform Deceptive Trade Practices Act (UDTPA), see Neb.Rev.Stat. §§ 87-301 through 87-306 (Reissue 1999 & Cum. Supp. 2006), and the Consumer Protection Act (CPA), see Neb. Rev.Stat. §§ 59-1601 through 59-1622 (Reissue 2004 & Cum. Supp. 2006). Jayco Acceptance Corporation (Jayco), which had *587 purchased consumer installment contracts from CCF, was also named as a defendant.
The district court for Lancaster County entered judgment against CCF and awarded damages to certain consumers. It also awarded costs, attorney fees, civil penalties, and injunctive relief, Jayco was found to be jointly and severally liable with CCF, but the amount recoverable from Jayco was limited to $96,308.21 plus interest and costs. Jayco was ordered to send notices to credit and collection organizations on behalf of each consumer, stating that the contract had been obtained by deception and had been rescinded. Jayco appealed, and the State has cross-appealed.

II. SCOPE OF REVIEW
The CPA is equitable in nature. State ex rel. Douglas v. Schroeder, 222 Neb. 473, 384 N.W.2d 626 (1986). The terms of the UDTPA provide only for equitable relief consistent with general principles of equity. Sid Dillon Chevrolet v. Sullivan, 251 Neb. 722, 559 N.W.2d 740 (1997).
In an appeal of an equity action, an appellate court tries the factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, however, that where credible evidence is in conflict on a material issue of fact, an appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. Archbold v. Reifenrath, 274 Neb. 894, 744 N.W.2d 701 (2008).

III. FACTS
CCF used installment contracts to sell food service plans and appliances to consumers. It supplied frozen foods, meats, and nonperishable dry goods but did not provide perishable items such as bread, milk, and fresh produce. Prospective consumers were told by CCF representatives that they would reduce their costs and would receive higher quality food. CCF also represented that its program would save the consumers time. The telephone marketers told the consumer that CCF would provide a new freezer that did not cost "`anything extra.'" Sales representatives then met with the consumer at home and represented the program as a savings of time and money.
CCF offered several types of purchase programs. In the premium program, the consumers enrolled in a 48-month plan. They were promised a 20-percent discount on food at the end of the term, a new freezer or other appliance, and a free ninth order with upgrade. Consumers were told that the freezer was included in the cost of food or at no additional cost, but salespeople were trained not to use the term "free."
Consumers were asked to sign two contracts: a food contract and a freezer contract. The food contract required a purchase of 6 months' worth of food at a price of $199 to $519 per month. The food contract was renewable every 6 months.
Under the freezer contract, consumers were offered a freezer, an alternate appliance, electronic equipment, or a gift certificate. Consumers were told there was no extra charge for the item. As part of the 48-month program, consumers also signed a membership contract at a cost of $90 to $99 per month for 48 months. The price of the food contract was reduced by the amount of the membership contract. Consumers could choose whether to renew the food contract at any time after the initial 6-month trial, but if no food was ordered after that period, consumers were required *588 to pay the monthly membership contract for the entire 48 months.
CCF stored dry goods and paper products in a warehouse. It had a walk-in freezer for meat and frozen products. CCF purchased the dry goods, paper, and nonperishable products in bulk at retail grocery stores and paid retail prices. Freezers and refrigerators were purchased from an appliance store and delivered to CCF customers at a cost of between $400 and $500.
In 2002, CCF had financial difficulties and by April was issuing checks without sufficient funds. At that time, CCF frequently shorted consumers on their food orders. However, it continued to sell membership contracts into September 2002 and went out of business December 31. CCF's principals and its sales manager filed suggestions of bankruptcy in August 2003.
CCF's business practice was to immediately assign its interests in the contracts to Jayco in consideration for a portion of the total value of the contract, less a percentage which Jayco would realize through receipt of the consumers' payments over the 4-year period.
After receiving more than 120 complaints about CCF and Jayco, the Attorney General requested that the Nebraska State Patrol investigate. In January 2001, the State Patrol began an undercover operation, and in April 2002, the State Patrol video-taped an encounter with one of CCF's sales representatives. The videotape shows a representative of CCF stating that its program would save the consumer time and money and that the food costs would never go up. As an incentive, CCF would provide a new freezer, which would include a 100-percent parts-and-labor warranty. The freezer was represented as being included in the program. The $99 monthly payment was represented as part of the food contract, because, as the representative stated, no one would pay $4,800 for a freezer.
The suit against CCF and Jayco asserted three causes of action: (1) violation of the UDTPA by representing that goods or services had characteristics, uses, or benefits that they did not have, including the representation that the food service plan would save consumers time and money and that the freezer, appliance, or gift certificate was free or at no additional cost; (2) violation of the UDTPA by engaging in unconscionable acts or practices in connection with consumer transactions by inducing consumers to sign both a food contract and a freezer contract; and (3) violation of the CPA by engaging in unfair and deceptive acts or practices in the conduct of trade or commerce by representing that the freezer, appliance, or gift certificate was free. The State sought injunctive relief prohibiting the defendants from continuing the deceptive practices, restitution, rescission of the agreements, a civil penalty against each of the defendants, and recovery of costs and attorney fees.
At trial, 36 consumers testified that they did not save time or money as represented by CCF. They were led to believe that they would receive free freezers, but later learned that they were required to pay Jayco either a $90 or $99 monthly payment for the 48-month membership benefit or freezer contract even if they were no longer receiving food from CCF.
The district court entered joint and several judgment in favor of the State and against CCF and Jayco in the amount of $96,308.21, to be distributed among 34 former CCF customers. The court awarded a total of $115,480.50 in attorney fees, jointly and severally against CCF and Jayco. The court also awarded costs in the amount of $10,457.14, also jointly and *589 severally against the parties. The court determined that the total amount to be recovered from Jayco could not exceed $96,308.21 plus costs. It concluded that collection of costs from Jayco was not limited by the Federal Trade Commission's holder rule (FTC Holder Rule), 16 C.F.R. § 433.2 (2008). Jayco appeals, and the State cross-appeals.

IV. ASSIGNMENTS OF ERROR
Jayco claims the district court erred in finding that it violated §§ 59-1602 and 87-302(a)(5) and in awarding excessive damages, injunctive relief, civil penalties, costs, and attorney fees.
In its cross-appeal, the State asserts that the district court misconstrued the CPA, the UDTPA, and the FTC Holder Rule by limiting the State's recovery from Jayco.

V. ANALYSIS

1. FTC HOLDER RULE
Jayco is the only defendant that has appealed to this court. Thus, we consider the basis of Jayco's liability under the causes of action brought by the State. The district court concluded Jayco's liability was based upon 16 C.F.R. § 433.2, the FTC Holder Rule. Jayco was the assignee of CCF's installment con-tracts, and under the FTC Holder Rule, an assignee or holder of consumer credit contracts is subject to all claims that the consumer may assert against the seller.
The federal regulation provides in pertinent part:
In connection with any sale or lease of goods or services to consumers, in or affecting commerce as "commerce" is defined in the Federal Trade Commission Act, it is an unfair or deceptive act or practice within the meaning of section 5 of that Act for a seller, directly or indirectly, to:
(a) Take or receive a consumer credit contract which fails to contain the following provision in at least ten point, bold face, type:
NOTICE ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.
16 C.F.R. § 433.2. The regulation interprets the Federal Trade Commission Act. Maberry v. Said, 911 F.Supp. 1393 (D.Kan.1995).
Pursuant to the FTC Holder Rule, "a consumer-debtor may assert against a creditor-assignee of a consumer credit contract any and all affirmative claims for recovery, as well as defenses, that the consumer-debtor would be entitled to assert against the seller had the contract not been assigned." Beemus v. Interstate Nat. Dealer Serv., 823 A.2d 979, 986 (Pa.Super.2003). In other words, the holder/assignee of a retail installment contract which includes the FTC Holder Rule is subject to any claim or defense the debtor could assert against a seller, as long as the claim or defense arises out of or is connected with the original transaction. Primus Auto Financial Serv. v. Brown, 163 Ohio App.3d 746, 840 N.E.2d 254 (2005). "Claims and defenses may be raised against the assignee, even where the seller. . . is insolvent, as long as the claims were asserted or could have been asserted against the seller." Id. at 749, 840 N.E.2d at 257.
*590 The purpose of the FTC Holder Rule was to modify the effect of the holder-in-due-course rule on consumer purchases of goods and services. Ambre v. Joe Madden Ford, 881 F.Supp. 1182 (N.D.Ill.1995). The holder-in-due-course principle allowed the creditor to assert its right to be paid by the consumer even if there was misrepresentation, breach of warranty or con-tract, or fraud on the part of the seller. Simpson v. Anthony Auto Sales, Inc., 32 F.Supp.2d 405 (W.D.La. 1998). "Under the holder[-]in[-]due[-]course rule, a consumer's obligation to pay for goods or services was not conditioned upon the seller's corresponding duty to perform his promises." Ambre v. Joe Madden Ford, 881 F.Supp. at 1185. If a consumer purchased defective goods on credit, the obligation to pay the third-party creditor remained, even though the seller failed to perform. Id.
The FTC Holder Rule was "designed to reallocate the cost of seller misconduct to the creditor, who is in a better position to absorb the loss or recover the cost from the guilty partythe seller." Riggs v. Anthony Auto Sales, Inc., 32 F.Supp.2d 411, 416 (W.D.La.1998). See, also, Simpson v. Anthony Auto Sales, Inc., supra; Maberry v. Said, supra; Home Sav. Ass'n v. Guerra, 733 S.W.2d 134 (Tex. 1987).
In the case at bar, the FTC Holder Rule allows a CCF consumer to assert against Jayco any affirmative claim for recovery that the consumer could assert against CCF. The only express limitation in the rule concerns the maximum recovery available to a debtor. Beemus v. Interstate Nat. Dealer Serv., supra.
In the State's petition, Jayco was named as a defendant. It was alleged that Jayco had purchased consumer installment contracts sold by CCF during the previous 4 years. The action was not brought against Jayco for its conduct, but because it was an assignee of the contracts from CCF. The petition alleged that the "[r]espondents" violated the CPA and the UDTPA, but it does not contain any specific allegations against Jayco. It is clear that Jayco's liability is based upon the FTC Holder Rule, as the district court so found.
Jayco does not argue that the FTC Holder Rule does not apply, and it concedes that the rule should be applied here. Thus, under the rule, CCF consumers could assert claims for recovery against Jayco as the assignee of the contracts between the consumers and CCF. Jayco's liability therefore arises from the fact that CCF violated the CPA and/or the UDTPA and the fact that Jayco was the assignee of the consumer contracts with CCF. See Milchen v. Bob Morris Pontiac-GMC Truck, 113 Ohio App.3d 190, 197, 680 N.E.2d 698, 703 (1996) (assignee agreed to be "derivatively liable" for seller's violations of Consumer Sales Practices Act when it accepted terms of consumer contract). If CCF violated the CPA and/or the UDTPA, Jayco was subject to all claims which the consumers could assert against CCF. As the holder of the contracts assigned from CCF, Jayco was, in effect, subject to any claims made against CCF. If CCF violated the CPA and/or the UDTPA, Jayco could be held liable, subject to the limitations in the FTC Holder Rule. We therefore examine whether CCF violated the CPA and/or the UDTPA.

(a) Violation of CPA
Pursuant to the CPA, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful." § 59-1602. The CPA does not define "unfair" or "deceptive," and this court has not defined these terms in case law. The U.S. District Court for the District of Nebraska has interpreted the CPA in a case involving *591 a dispute between merchants. The court stated that in order to prove an unfair practice when merchants have entered into a contract, the plaintiff must prove that the practice either "(1) fell within some common-law, statutory, or other established concept of unfairness or (2) was immoral, unethical, oppressive, or unscrupulous." Raad v. Wal-Mart Stores, Inc., 13 F.Supp.2d 1003, 1014 (D.Neb. 1998). In addition, the plaintiff must "show that the promisor had no intent to perform the promise when it was made" and the plaintiff must "prove that the practice possessed the tendency or capacity to mislead, or created the likelihood of deception." Id.
The record in this case is replete with examples of deceptive acts on the part of CCF that were unethical and unscrupulous. Most of the consumers who testified had signed 48-month membership contracts that included the notice required under the FTC Holder Rule. A majority of the consumers signed contracts that required them to purchase a freezer or appliance, rather than receiving it free as represented to them by the CCF representative. Consumers testified that even if they had a freezer, they accepted the freezer from CCF because the company "implied that it would be silly of us not to take the free freezer because it was free" or "it was part of the bonus" of becoming a CCF consumer. After making monthly payments of $90 or $99 on the freezer contracts over a 4-year period, consumers ended up paying as much as $4,752 for a freezer, even though they no longer received food and service from CCF.
CCF told consumers that they would save time and money by signing a food contract, when in reality, consumers saved neither. Consumers testified that they spent more money on food than they had before entering into the contracts. CCF's prices were higher when compared to the same product in a grocery store. One consumer used CCF's point system to determine he paid $15 for a bag of brand-name hash browns that normally cost about $2 at the grocery store. The food contracts were based on a point system that was illusory because it did not inform the consumers as to how much food they would receive each month.
Consumers testified they did not save time because they went to the grocery store 12 to 15 times in a month to buy items not provided by CCF or to supplement their orders. When they ran out of items from CCF, the consumers spent time on the telephone trying to reorder from CCF. It also took time to rearrange the food when it was delivered, because the food was not placed in the freezer in an orderly fashion.
There was evidence that the deceptive practices of CCF were aggravated by the fact that CCF had no intention of keeping its promises or agreements. The company continued to sell contracts even after it began to have financial difficulty and was going out of business. The sales techniques of CCF had the capacity to mislead, because consumers were led to believe they would save time and money by enrolling in the program. And it was represented to them that the freezer or another appliance was free as a part of the program, when the reality was that the consumers were paying more than $4,000 for the freezer over a 4-year period. The evidence presented at trial established that CCF engaged in unfair and deceptive practices in the sale of assets and services and in commerce as contemplated by the CPA. The record supports a finding that CCF violated the CPA.

(b) Violation of UDTPA
The UDTPA provides that a person has engaged in a deceptive trade practice *592 when, in the course of business, he or she "[r]epresents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have." § 87-302(a)(5). Thus, to establish a violation of the UDTPA, there must have been a representation regarding the nature of goods or services and the representation must have been for characteristics or benefits that the goods or services did not have.
CCF represented that the freezer offered to consumers was provided at no extra charge. However, the freezer was included as a part of the 48-month contract, which required consumers to sign two separate contracts: one for food and one for the freezer. The freezer contract required them to pay an extra $90 to $99 per month for 48 months. Over the course of the contract, the consumers would pay an additional $4,000 for the freezer, which CCF purchased from another retailer for between $400 and $500.
Consumers were deceived in other ways. One consumer requested an electric stove as her "free" appliance to replace her gas stove. CCF promised installation of the stove, but at the time of trial, the stove was still in the consumer's garage. Several consumers reported that they attempted to use the freezer or food spoilage warranty included in the membership contract, but received no help from CCF. The company also refused to honor the guarantees of a price freeze and satisfaction with the food. It failed to provide a nationwide network for consumers if they moved out of Nebraska and refused to offer the lifetime 20-percent discount as promised. CCF also failed to provide the free ninth order as provided in the membership contract.
Consumers were told that they needed to sign both a food contract and a freezer contract because "it was law, you cannot combine food and service contracts." They were told that the Attorney General's office had recommended two contracts. This representation was false. In addition, consumers were told that the contracts would not be sold to a third party, but the contracts were sold to Jayco.
The evidence showed that CCF sold goods and services that were not as advertised, misrepresented the characteristics of goods and services, caused misunderstanding as to the source of goods and services, and caused confusion and misunderstanding as to CCF's affiliation with other food service businesses throughout the country, all in violation of the UDTPA.

(c) Jayco's Liability
Jayco, as the holder of CCF's contracts, was liable under the FTC Holder Rule for CCF's violations under the CPA and the UDTPA. Jayco was liable on any claims or defenses upon which the consumers succeeded. The district court found that the consumers were entitled to recover from Jayco on the claims they had against CCF to the extent of any money they paid to Jayco. The record showed that Jayco purchased the membership contracts of 34 of the 36 consumers from CCF and that Jayco had been paid $96,308.21 by those consumers. Thus, Jayco was liable to the extent it received proceeds on 34 of the membership contracts.
Both the CPA and the UDTPA are equitable in nature. See, Sid Dillon Chevrolet v. Sullivan, 251 Neb. 722, 559 N.W.2d 740 (1997); State ex rel. Douglas v. Schroeder, 222 Neb. 473, 384 N.W.2d 626 (1986). Thus, this is an appeal of an equity action, and as such, this court tries the factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, however, that where credible evidence is in conflict on a material issue of fact, an appellate court *593 considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. Archbold v. Reifenrath, 274 Neb. 894, 744 N.W.2d 701 (2008).
CCF bought its food and freezers from other retail establishments. It was therefore obvious that CCF would not be able to pass on savings to consumers and that CCF knew the products it was selling were not as advertised. CCF promised goods and services that it did not intend to deliver. We have reviewed the factual questions de novo on the record and reach an independent conclusion that the evidence supports a finding that CCF violated the CPA and the UDTPA. Under the FTC Holder Rule, Jayco is therefore liable for CCF's actions.

2. AWARD
Having found that Jayco was liable, we next consider the district court's award of damages. The court determined that the FTC Holder Rule limits the debtors' recovery against Jayco to the amount the debtors paid on the membership contracts, which was $96,308.21.
The State has filed a cross-appeal as to the amount of dam-ages awarded. The State argues that it should be able to recover attorney fees because the CPA and the UDTPA provide for discretionary attorney fees.
The Federal Trade Commission's Bureau of Consumer Protection has stated:
"[The FTC Holder Rule] limits the consumer to a refund of monies paid under the contract, in the event that an affirmative money recovery is sought. In other words, the consumer may assert, by way of claim or defense, a right not to pay all or part of the outstanding balance owed the creditor under the contract; but the consumer will not be entitled to receive from the creditor an affirmative recovery which exceeds the amounts of money the consumer has paid in. . . . The limitation on affirmative recovery does not eliminate any other rights the consumer may have as a matter of local, state, or federal statute."
Riggs v. Anthony Auto Sales, Inc., 32 F.Supp.2d 411, 416 (W.D.La.1998).
In Nebraska, both the CPA and the UDTPA allow for attorney fees. Under the CPA, the prevailing party may recover the costs of the action, including a reasonable attorney fee, at the court's discretion. § 59-1608(1). The court may make additional orders to restore money or property acquired by any act prohibited in the CPA. § 59-1608(2). The UDTPA provides that costs shall be allowed to the prevailing party and that attorney fees may be allowed. § 87-303.
The amount of damages to be awarded is a determination solely for the fact finder, and its action in this respect will not be disturbed on appeal if it is supported by evidence and bears a reasonable relationship to the elements of the damages proved. Roth v. Wiese, 271 Neb. 750, 716 N.W.2d 419 (2006). The district court calculated the amount of damages to be awarded against Jayco by determining the amount of money Jayco received on the contracts it obtained by assignment from CCF.
The issue whether the FTC Holder Rule limits the amount of recovery against Jayco is one of first impression before this court. Courts are divided as to the award of attorney fees. In Kish v. Van Note, 692 S.W.2d 463 (Tex.1985), the Texas Supreme Court awarded attorney fees in a deceptive practices action where the contract included the FTC Holder Rule. The court held the assignee bank jointly liable for attorney fees on appeal. In Home Sav. *594 Ass'n v. Guerra, 733 S.W.2d 134 (Tex. 1987), the court held the assignee liable for attorney fees because the assignee waived its claim to the allocation of attorney fees at trial by failing to object. In Oxford Finance Companies, Inc. v. Velez, 807 S.W.2d 460 (Tex.App.1991), the court relied on Home Sav. Ass'n v. Guerra, supra, noting that the Guerra court's position was consistent with a determination that a buyer's recovery against a creditor/assignee is limited. The court held that the buyer could recover only the attorney fees that resulted from her attorney's pursuit of claims against the assignee lender.
The National Consumer Law Center (Center), in its treatise on unfair and deceptive acts and practices, states:
The purpose of attorney fees is to encourage settlement, make it economically feasible for consumers to bring small claims, and to discourage sellers and creditors from using their superior legal resources to wear down the consumer. All of these purposes would be thwarted if attorney fees were lumped in with the recovery on the merits and capped at the amount of the creditor's maximum liability.
Jonathan Sheldon et al., Unfair and Deceptive Acts and Practices, § 6.6.3.5 at 614 (6th ed. 2004). The Center stated that the "creditor's liability for the consumer's attorney fees should not be capped by the creditor's maximum liability for seller-related claims." Id. Because the right to recover is based on a deceptive practices statute, not on the FTC Holder Rule, the phrase "`recovery hereunder'" should not apply to the recovery of attorney fees and should not be subject to the cap. Id.
Some courts have allowed attorney fees but limited the amount under the FTC Holder Rule. The federal court in Louisiana held that the plaintiff could recover a share of attorney fees, "provided that the maximum recovery by any plaintiff may not exceed the amount paid [the holder] by that plaintiff." Simpson v. Anthony Auto Sales, Inc., 32 F.Supp.2d 405, 410 (W.D.La.1998).
In Riggs v. Anthony Auto Sales, Inc., 32 F.Supp.2d 411 (W.D.La.1998), the court stated that the purpose of the language in the FTC Holder Rule is not to allow a consumer to recover more than he has paid. The court stated:
A rule of unlimited liability would place the creditor in the position of an insurer or guarantor of the seller's performance. This court does not construe this to be the purpose of the FTC rule. Accordingly, this court holds that a creditor's derivative liability for seller misconduct under the FTC rule is limited to the amount paid by the consumer under the credit contract. . . . [E]ach lender's liability is limited to the amount paid to it by that plaintiff.
Id. at 417. See, also, Simpson v. Anthony Auto Sales, Inc., supra; Home Sav. Ass'n v. Guerra, 733 S.W.2d 134 (Tex.1987).
The Riggs court awarded each plaintiff his or her actual dam-ages, the costs of the action, and the "lender's pro rata share of reasonable attorney's fees, provided that the maximum recovery by any plaintiff may not exceed the amount paid the lender by that plaintiff." 32 F.Supp.2d at 417.
The Ohio Court of Appeals held that attorney fees were not "claims" that the consumer could assert under the FTC Holder Rule where the assignee was not involved in effecting consumer transactions. Hardeman v. Wheels, Inc., 56 Ohio App.3d 142, 565 N.E.2d 849 (1988). The assignee should not be subject to claims which "encompass penalties specifically designed to be assessed against the supplier. . . for the supplier's statutory or common-law *595 infractions." Id. at 146, 565 N.E.2d at 853.
The State argues that the fee award should not be capped by the FTC Holder Rule's language and cites another section of the Center's treatise, which states:
If this limit applied to attorney fees as well, this would effectively insulate holders from such awards, even if they refused to reach reasonable settlements of [defective practices] claims. Courts have thus found that the holder is liable for the consumer's attorney fees, even if these fees exceed the amount of the debt, at least for attorney fees incurred to overcome the holder's denial of liability.
Jonathan Sheldon et al., Unfair and Deceptive Acts and Practices, § 8.8.9 at 812 (6th ed. 2004).
We agree with the federal court's interpretation in Riggs v. Anthony Auto Sales, Inc., supra, that the FTC Holder Rule limits a debtor's recovery to the amounts paid by the debtor. We conclude that under the FTC Holder Rule, the maximum recovery by any plaintiff may not exceed the amount paid to the holder by that plaintiff; the debtor may not recover more than the amount the debtor paid. In this case, Jayco was paid $96,308.21 by CCF consumers and judgment was entered against Jayco in that amount, along with interest and costs.
In the cases cited above, the claims were brought by the consumers. Here, the petition was filed by the State through the Attorney General, and it is the State which seeks attorney fees for the time spent by its Attorney General. A trial court's decision awarding or denying attorney fees will be upheld absent an abuse of discretion. In re Trust of Rosenberg, 273 Neb. 59, 727 N.W.2d 430 (2007). We find no abuse of discretion in the district court's award which held that the total recovery from Jayco could not exceed $96,308.21, the amount paid by the consumers to Jayco, plus court costs of $10,457.14 and interest at the rate of 7.094 percent per annum. The award was proper under the FTC Holder Rule. The State's cross-appeal asserting that it should be able to recover attorney fees is without merit.
Jayco also argues that it should not have been subject to injunctive relief, which is available under the CPA and the UDTPA but not provided for in the FTC Holder Rule. We disagree. Under the FTC Holder Rule, Jayco is subject to the same claims and defenses that a consumer might have against CCF, the originator of the contract. A consumer can seek equitable relief under both the CPA and the UDTPA. See §§ 59-1609 and 87-303. The FTC Holder Rule does not limit the type of remedies that can be sought against a holder in due course. The district court was correct in granting the injunctive relief.

3. REMAINING ASSIGNMENTS OF ERROR
Jayco asserts that the district court abused its discretion in relying on irrelevant evidence and evidence not identified in the pretrial order. However, Jayco does not identify any specific evidence or testimony that was irrelevant and erroneously received by the district court. In a bench trial, the court is presumed to have considered only competent and relevant evidence in making its decision. See Eicher v. Mid America Fin. Invest., Corp., 270 Neb. 370, 702 N.W.2d 792 (2005). In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue. In re Trust Created by Isvik, 274 Neb. 525, 741 N.W.2d 638 *596 (2007). This court tries factual questions de novo on the record and does not consider any impermissible or improper evidence. See Gomez v. Savage, 254 Neb. 836, 580 N.W.2d 523 (1998). Our de novo review of the record does not reveal that the district court abused its discretion in the admission of evidence in contravention to the pretrial order.
Jayco also claims the district court erred in failing to grant judgment to it under § 87-303.01(1), which provides that an "unconscionable act or practice by a supplier in connection with a consumer transaction" is a violation of the UDTPA. Jayco argues that the CCF contracts were not unconscionable. However, the district court made no findings of fact or conclusions of law as to the unconscionability of the actions of CCF or Jayco. An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court. Reimers-Hild v. State, 274 Neb. 438, 741 N.W.2d 155 (2007). We need not address this alleged error any further.
We find no merit to the remaining assignments of error asserted by Jayco.

VI. CONCLUSION
The judgment of the district court is affirmed. The cross-appeal has no merit, and it is dismissed.
AFFIRMED.