## LEO FERRARI *VS.* COMMONWEALTH.

Suffolk. November 7, 2006. - January 9, 2007.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, SOSMAN, & CORDY, JJ.

*Constitutional Law,* Double jeopardy. *Practice, Criminal,* Double jeopardy. *Obscenity,* Dissemination of obscene matter to minor.

A single justice of this court did not err in denying a criminal defendant's petition for relief from a Superior Court judge's denial, at the retrial after mistrial of an indictment charging dissemination of matter harmful to a minor, of the defendant's motion to dismiss, brought on double jeopardy grounds, where a rational trier of fact could find that the Commonwealth had proved each element of the offense beyond a reasonable doubt based on the evidence presented at the first trial. [165-169]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on August 17, 2004.

The case was heard by *Cowin,* J.

*John-Paul LaPré* for the plaintiff.

*Sheryl F. Grant,* Special Assistant District Attorney (*Kerry Aleman,* Assistant District Attorney, with her) for the Commonwealth.

IRELAND, J. Leo Ferrari (defendant) was tried on five indictments charging indecent assault and battery on a child under fourteen years, one indictment charging open and gross lewdness, and one indictment charging dissemination of matter harmful to a minor on divers dates between March, 2001, and August, 2002. When the jury were unable to reach unanimous verdicts on the latter two charges, the Commonwealth decided to retry the defendant.[1] He filed a motion to dismiss on double jeopardy grounds, arguing that the Commonwealth did not have sufficient evidence to convict him of dissemination of matter harmful to a minor in violation of G. L. c. 272, § 28. That motion was denied. The defendant then filed in the county court a peti-

---

[1] The jury found the defendant not guilty of the four indecent assault and battery charges submitted to them.

tion for relief pursuant to G. L. c. 211, § 3, which was denied by a single justice. The defendant appealed, claiming that the single justice erred in denying his petition. Because we conclude that a rational trier of fact could find that the Commonwealth had proved each element of the offense beyond a reasonable doubt based on the evidence presented at trial, we affirm the denial of the defendant's petition for relief.

*Facts and procedural background.* We summarize the essential facts.

The defendant hired a twelve year old girl, whom we shall call Jane, to work at the Fairway Driving Range (Fairway) in Marlborough to assist with washing golf balls during the summer of 2001. She eventually operated the cash register, fixed batting cages, and collected balls from the driving range. In April, 2002, Jane began working at Fairway again. Although Jane initially enjoyed working with the defendant and soon referred to him as "Uncle Leo," she testified that she began to feel uncomfortable.

At trial, Jane testified that on three occasions between March, 2001, and August, 2002, the defendant showed her "porn" videotapes in the clubhouse at Fairway. Jane testified that on each occasion the defendant used a video cassette recorder on the Fairway premises and showed her these videotapes when no one else was around. Jane further testified that these videotapes were kept on a shelf in the clubhouse and concealed in a golf videotape case. She recounted in graphic detail the sexual conduct she specifically observed on all three occasions.[2] She also described in detail one particular incident where the defendant exposed himself to her while showing her a "porn" videotape. She admitted that she did not reveal these events to anyone until the third incident because she was "scared." Jane testified that after the defendant showed her a "porn" videotape on her final night working at Fairway, she telephoned a friend when she arrived home. The friend contacted Jane's mother, who took Jane to the police station. After Jane spoke to the police, two officers went to the defendant's residence and ar-

---

[2]We have carefully reviewed Jane's testimony but think it is unnecessary to present the specific details here.

rested him.[3] Shortly thereafter, the police contacted the manager of Fairway, who consented to a search of the premises. Although the officers discovered the television in the office area, as Jane described, they were unable to recover the videotapes at Fairway. However, after searching the defendant's residence, one of the police officers recovered a pornographic videotape.[4]

At the conclusion of the Commonwealth's case, the defendant filed a motion for required findings of not guilty on all charges. However, at the hearing, the defendant did not argue that the Commonwealth presented insufficient evidence to support the charges of open and gross lewdness and dissemination of matter harmful to a minor, but only discussed the indecent assault and battery charges. The judge denied the motion except for one of the indecent assault and battery charges. Thereafter, the defendant testified and denied all remaining charges, including showing pornographic videotapes to Jane. At the close of the defendant's case, the remaining charges were submitted to the jury. They returned verdicts of not guilty on the remaining indecent assault and battery charges but were unable to reach unanimous verdicts on the other two charges.

*Discussion.* General Laws c. 272, § 28, makes it a crime to knowingly disseminate[5] any matter[6] that is harmful to a minor.[7]

[3]The defendant was placed under arrest after explaining what had happened between Jane and himself earlier that evening. Specifically, he stated, "We were fooling around together and throwing water at each other."

[4]During a sidebar at trial, a discussion commenced regarding the pornographic videotape that was recovered at the defendant's residence after the police conducted a search. The Commonwealth stated that it was not planning to introduce the videotape because of an inability to lay the necessary evidentiary foundation for its admission in evidence as one of the videotapes that was shown to Jane. However, the Commonwealth did not indicate whether this videotape was, in fact, shown to Jane. The Commonwealth stated in its memorandum in opposition to defendant's petition for relief pursuant to G. L. c. 211, § 3, that it may or may not use the videotape at a later trial.

[5]Under G. L. c. 272, § 31, "[d]isseminate" means "to import, publish, produce, print, manufacture, distribute, sell, lease, exhibit or display."

[6]"Matter" is "any handwritten or printed material, visual representation, live performance or sound recording including but not limited to, books, magazines, motion picture films, pamphlets, phonographic records, pictures, photographs, figures, statues, plays, dances." G. L. c. 272, § 31.

[7]The defendant argues that dissemination of photographs or videotapes, as is the case here, is speech that is protected under the First Amendment to the

A minor is a person under eighteen years of age.[8] Matter is "[h]armful to minors" if it is "obscene[9] or, if taken as a whole, it (1) describes or represents nudity, sexual conduct or sexual excitement, so as to appeal predominantly to the prurient interest of minors; (2) is patently contrary to prevailing standards of adults in the county where the offense was committed as to suitable material for such minors; and (3) lacks serious literary, artistic, political or scientific value for minors." G. L. c. 272, § 31.

The defendant argues that the single justice erred in denying his petition for relief of the denial of his motion to dismiss. We review the single justice's decision denying the defendant relief pursuant to G. L. c. 211, § 3, for an abuse of discretion or other error of law. The defendant contends that, because the videotapes were not admitted in evidence, the Commonwealth failed to present sufficient evidence to satisfy the third part of the definition of "[h]armful to minors," as set forth in G. L. c. 272, § 31. The defendant further argues that the Commonwealth failed to introduce the alleged "porn" videotapes and instead solely relied on the testimony of Jane regarding the videotapes' contents. The defendant claims that Jane's descriptions of the contents were short and incomplete and, in turn, that the jury were unable fully to realize the contents of the videotapes to ascertain whether the other portions contained

United States Constitution and art. 16 of the Massachusetts Declaration of Rights, as amended by art. 77 of the Amendments to the Massachusetts Constitution. However, the defendant neglects to mention that obscenity is not protected by the First Amendment, although nonobscene adult entertainment is entitled to constitutional protection. *T & D Video, Inc.* v. *Revere*, 66 Mass. App. Ct. 461, 467 (2006). See *Schad* v. *Mount Ephraim*, 452 U.S. 61, 65-67 (1981); *Roth* v. *United States*, 354 U.S. 476, 485 (1957). A court must determine whether the speech in question may be suppressed within constitutional standards. *Commonwealth* v. *Moniz*, 338 Mass. 442, 447 n.1 (1959). In any event, the defendant does not make, nor could he make, any argument regarding the constitutionality of G. L. c. 272, §§ 28 and 31. These statutes are constitutional. See *Commonwealth* v. *Ferro*, 372 Mass. 379, 381-382 (1977); *Commonwealth* v. *707 Main Corp.*, 371 Mass. 374, 376 (1976).

[8]It is uncontested that Jane was a minor at the time.

[9]Matter is "obscene" as defined in G. L. c. 272, § 31, "if taken as a whole it (1) appeals to the prurient interest of the average person applying the contemporary standards of the county where the offense was committed; (2) depicts or describes sexual conduct in a patently offensive way; and (3) lacks serious literary, artistic, political or scientific value."

serious literary, artistic, political, or scientific value pursuant to the statute. Because the Commonwealth did not introduce any videotapes, the defendant states the jury were unable to view the contents "as a whole," as required by the statute, and were forced to speculate on the remaining contents of the videotapes. Thus, the defendant argues, retrial would violate his rights against double jeopardy under the Fifth Amendment to the United States Constitution.[10] We disagree.

"In order for a defendant to be placed twice in jeopardy, his original jeopardy must have terminated." *Berry* v. *Commonwealth*, 393 Mass. 793, 796 (1985). Original jeopardy terminates when proceedings against a defendant end. However, as the defendant concedes, if the Commonwealth presents legally sufficient evidence to convict, double jeopardy will not prevent retrial after a mistrial is declared because of the jury's inability to reach a unanimous decision. *Thames* v. *Commonwealth*, 365 Mass. 477, 479 (1974). See *Richardson* v. *United States*, 468 U.S. 317, 326 (1984).

Although the Commonwealth did not produce at trial the videotapes that the defendant allegedly had shown to Jane, we disagree with the defendant's assertion that the absence of the videotapes prevented the jury from deciding whether, "as a whole," the videotapes lacked literary, artistic, political, or scientific value. In *Commonwealth* v. *Rollins*, 60 Mass. App. Ct. 153, 154-156 (2003), the Commonwealth introduced excerpts from a magazine that were admitted in evidence against the defendant, who was charged with disseminating obscene matter to both adults and minors pursuant to G. L. c. 272, §§ 28 and 29. In that case, the witnesses stated that the defendant threw "pornographic" pages of a magazine out of a car window, doing so once in the presence of minors at a school bus stop. *Id.* at 155-156. Although the entire magazine was not admitted in evidence, the court stated that "[t]aken as a whole," the specific pages that were admitted were sexually explicit and satisfied the statutory definition of obscenity, and affirmed three counts of disseminating obscene matter pursuant to G. L. c. 272, § 31.

---

[10]The double jeopardy clause of the Fifth Amendment to the United States Constitution states: "[N]or shall any one person be subject for the same offense to be twice put in jeopardy of life or limb . . . ."

*Id.* at 159 (reversing conviction of disseminating material harmful to minors because children did not see contents). Similarly, in *New Palm Gardens, Inc.* v. *Alcoholic Beverages Control Comm'n*, 11 Mass. App. Ct. 785, 791-793 (1981), an inspector of the Alcoholic Beverages Control Commission (commission) testified and gave a description before the commission of a portion of an obscene performance he had observed. The Appeals Court stated, "The inspector's description to the commission was sufficiently complete to give the full flavor of the performance and the commission could properly conclude that the likelihood that the unseen portions had 'serious literary, artistic, political or scientific value' was remote." *Id.* at 793. See *Commonwealth* v. *Plank*, 378 Mass. 465, 467 (1979) (two officers allowed to testify concerning portion of observed dance; court ultimately concluded that testimony was insufficient to support finding that dance depicted "sexual conduct 'in a patently offensive way' as required by the definition of obscene in § 31").[11]

In making his argument the defendant states that in *Commonwealth* v. *Isenstadt*, 318 Mass. 543, 554 (1945), this court reviewed the entire book at issue "as a whole." The defendant's reliance on that case is unavailing. There, the defendant was convicted of selling and possessing, for the purpose of sale, exhibition, loan, or circulation, a book that allegedly was "obscene, indecent or impure, or manifestly tends to corrupt the morals of youth." *Id.* at 547. Because the charge concerned four descriptions of scenes involving sexual intercourse contained in the book, the court viewed the entire book as a whole to determine whether it was obscene, indecent, or impure. In this case, the whole of Jane's observations are at issue.

At trial, Jane was asked specifically to describe what she saw.[12] Jane testified that on three occasions the defendant showed her a videotape that contained sexual conduct and

---

[11]In *Commonwealth* v. *Plank*, 378 Mass. 465, 469 (1979), the court noted that because a live performance, such as a dance, is intangible, the jury had to rely on the observations of the two police officers. Similarly, in this case, the specific videotapes are not available.

[12]The defendant argues that the Commonwealth failed to "flesh out" the third part of the definition of "harmful to minors" found in G. L. c. 272, § 31, because Jane was not asked questions relating to the length of the

nudity. When asked to describe the content, Jane specifically detailed the scenes that she observed. Jane's testimony as to the entire contents of the "porn" videotapes she personally observed was sufficient.[13]

In this case, considering in its entirety the details Jane recounted, the descriptions alone, without the admission of the entire videotapes, are sufficient to support the third part of the definition of "[h]armful to minors" in G. L. c. 272, § 31. Viewing the essential facts in the light most favorable to the Commonwealth, the Commonwealth presented sufficient evidence from which a rational trier of fact could find beyond a reasonable doubt that the defendant disseminated matter harmful to a minor in violation of G. L. c. 272, § 28. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). Thus, original jeopardy has not terminated, and the Commonwealth may retry the defendant.

*Conclusion.* For the reasons set forth above, we affirm the order of the single justice denying the defendant's petition for relief.

*So ordered.*

---

videotapes; how long she watched them; the number of characters in the movie, including whether there were major and minor characters; other activities characters may have undertaken; whether the movie had many different scenes or a story line; and whether the videotapes involved science or took place in a laboratory, a museum, or a theater. Although the prosecutor may not have asked these specific questions, the prosecutor did ask Jane specific questions pertaining to what she observed, where she was located when she saw the videotapes, the form of the movie, and whether any other person was working at the clubhouse when the defendant showed her the videotapes.

[13]The defendant claims that there are "un-described portions of the tapes" that could have been different from the content that Jane described. This is mere speculation and is unsupported by the record, especially given that the main defense at trial was that the defendant did not show anyone pornographic videotapes at Fairway.