WIGGINS, Justice.
The operator of an establishment offering nude and seminude dance performances sought an injunction restraining a city from enforcing its ordinance regulating nude and seminude dancing. The district court found that state law did not preempt the ordinance and that the ordinance was constitutional. On appeal, we find that state law preempts enforcement of the ordinance and that it is unenforceable against the establishment. Accordingly, we reverse the judgment of the district court and remand the case with instructions to the court to enter an order enjoining the city from enforcing its ordinance against the establishment.
I. Background Facts and Proceedings.
On December 8, 2008, the Hamburg city council passed chapter 48 of its city code. The ordinance, known as the “Sexually Oriented Business Ordinance,” contains provisions relating to licensing and zoning and imposes a range of regulations upon sexually oriented businesses. The stated purpose of the ordinance is to “regulate sexually oriented businesses in order to promote the health, safety, morals, and general welfare of the citizens of the City, and to establish reasonable and uniform regulations to prevent the deleterious secondary effects of sexually oriented businesses.” Hamburg, Iowa, Code § 48.010.01 (Dec. 8, 2008). The ordinance also states, “[I]t is neither the intent nor effect of this ordinance to restrict or deny access by adults to sexually oriented materials protected by the First Amendment to the Constitution of the United States of America....” Id.
Businesses subject to the terms of the ordinance include adult cabarets, which the ordinance defines, among other things, as any “business or entity that is with the emphasis on observation or viewing of nude or semi-nude performances whether the performers receive compensation or not, that regularly features persons who appear nude or semi-nude.”[1] Id. *192 §§ 48.020.02, .030. The ordinance requires a sexually oriented business to have a valid sexually oriented business license and an employee of a sexually oriented business to have a valid sexually oriented business employee license. Id. § 48.040.01-.02. Further, the ordinance regulates many aspects and activities of sexually oriented businesses, including the consumption of alcohol on the premises, exterior portions of the businesses, signage, hours of operation, the exhibition of sexually explicit films, live nudity, and siting. See id. §§ 48.085-.087, .130-150, .180, .200.
For example, the ordinance prohibits the possession or consumption of alcoholic beverages by any person on the premises of a sexually oriented business. Id. § 48.085. The ordinance also prohibits any person from intentionally or knowingly appearing in a state of nudity or from intentionally or knowingly violating Iowa Code section 728.5.[2] Id. § 48.180.01. Similarly, the ordinance contains requirements that semi-nude employees remain more than six feet away from customers and on a stage at least two-feet high.[3] Id. § 48.180.02. It also prohibits the exchange of gratuities between customers and seminude employees and prohibits intentional contact between customers and seminude employees. Id. § 48.180.03, .04. Moreover, it restricts the size, number, and shape of a sexually oriented business’s signage, places restrictions on the content of such signs, and regulates the font and color scheme of such signs. Id. § 48.087.
The City imputes violations of the ordinance to the sexually oriented business licensee. Id. § 48.190. If a sexually oriented business licensee violates the ordinance or knowingly allows an employee to violate the ordinance, then the City may suspend the license of the business and the employee. Id. § 48.090. The ordinance also provides for the revocation of a sexually oriented business license. For example, the City may revoke a sexually oriented business license for activity on the premises related to controlled substances, alcohol, prostitution, acts of specified sexual activity, conduct negatively affecting the health, safety, or welfare of the citizens of Hamburg, or conduct otherwise in violation of the ordinance. Id. § 48.100.
Clarence Judy and Terry Rutledge own Mall Real Estate. Mall Real Estate leases space located at 701 Main Street in Hamburg to the Hamburg Theatre for the Performing Arts, which has been open for nine years and is also known as Shotgun Geniez. Mall Real Estate operates the parking lots surrounding the Hamburg Theatre. Persons who wish to enter the *193 Hamburg Theatre must pay an individual parking fee to Mall Real Estate. Performers at the Hamburg Theatre perform nude, seminude, and fully clothed. At times during performances, performers physically contact customers, often by sitting in their laps. The performers also spend time talking to customers. The Hamburg Theatre does not have a liquor license or sell alcohol, but it does allow customers to supply their own alcohol. Judy believes the customers at the Hamburg Theatre come to see nude dancing, get lap dances, and converse with the performers.
Judy testified the Hamburg Theatre does its best to ensure the customers and performers comply with the law. He further testified the Hamburg Theatre does its best to ensure minors do not enter. Hamburg Theatre employees have caught minors attempting to enter the club and turned them away. The Hamburg The-atre gives customers younger than twenty-one years old but older than eighteen years old a glow-in-the-dark wristband to signify they are not permitted to consume alcohol. Further, club employees keep watch to make sure no one with a wristband consumes alcohol. Performers must provide identification proving their age, but are otherwise free to perform in whatever manner they wish provided they comply with any applicable laws while in the Hamburg Theatre.
Judy estimates in excess of 112,000 customers have been to the Hamburg Theatre during the past nine years. The Hamburg Theatre has never been cited by police for unsightly litter, and no one in the club has been cited for engaging in sex acts on the premises or for purchasing or selling drugs. However, on one occasion the police cited a minor as a minor in possession of alcohol at the club. In addition, a seventeen-year-old once danced on stage, but the Hamburg Theatre was acquitted of any wrongdoing. There was also one case of alleged prostitution, which was dismissed. Seven or eight incidents involving the club have resulted in police reports. In defense of the Hamburg Theatre, Judy constructed a list of all calls to police that had been made within 1000 feet of the business since 2002, noting that only a few actually pertained to the Hamburg The-atre.
Shortly after the City adopted the ordinance, Mall Real Estate filed a petition seeking a declaratory judgment declaring that the City’s ordinance does not affect or apply to the Hamburg Theatre and that the ordinance is unconstitutional. Mall Real Estate further requested a temporary injunction restraining Hamburg from enforcing the ordinance against the Hamburg Theatre.
The district court denied Mall Real Estate’s request for declaratory and injunc-tive relief, holding the ordinance affected and applied to the Hamburg Theatre and was constitutional. Mall Real Estate filed a notice of appeal. The district court stayed enforcement of the ordinance pending the outcome of this appeal. On appeal, Mall Real Estate argues the ordinance does not apply to the Hamburg Theatre, conflicts with state law, and violates the Iowa Constitution. Mall Real Estate bases its preemption argument on its assertion that the Hamburg Theatre is a theater for the purposes of Iowa Code section 728.5 (2009).[4] The City asserts it may pass valid zoning and licensing regulations. At trial, the parties agreed the sections of the ordinance relating to zoning would not affect Mall Real Estate because the Hamburg Theatre preexisted the ordinance. Therefore, we have no reason to consider any part of the ordinance related to zoning.
*194 II. Issues.
Because the issue of whether state law preempts the City’s ordinance is disposi-tive of this appeal, we need not reach the constitutional issues raised.
III. Scope of Review.
We review whether state law preempts a municipal ordinance for correction of errors of law because it is a question of statutory construction. Hensler v. City of Davenport, 790 N.W.2d 569, 578 (Iowa 2010).
IV. Whether the Iowa Code Preempts the Hamburg Ordinance.
Mall Real Estate asserts the Hamburg ordinance conflicts with state law because section 728.5 contains a theater exception and the Hamburg ordinance does not. Mall Real Estate bases this argument on two other district court decisions that the district court distinguished as dealing with different statutes under different facts and circumstances. The City responds by arguing section 728.11 allows local governments to pass ordinances related to zoning and licensing of such businesses.
Section 728.5 exempts theaters from the statewide ban of public nudity. See Iowa Code § 728.5. Section 728.11 contains a uniform application provision. It provides:
In order to provide for the uniform application of the provisions of this chapter relating to obscene material applicable to minors within this state, it is intended that the sole and only regulation of obscene material shall be under the provisions of this chapter, and no municipality, county or other governmental unit within this state shall make any law, ordinance or regulation relating to the availability of obscene materials. All such laws, ordinances or regulations shall be or become void, unenforceable and of no effect on January 1, 1978. Nothing in this section shall restrict the zoning authority of cities and counties.
Id. § 728.11.
In construing statutes, our goal is to ascertain legislative intent. Auen v. Alcoholic Beverages Div., 679 N.W.2d 586, 590 (Iowa 2004). In doing so, we consider the language the general assembly used in the statute, the object the general assembly sought to accomplish, and the wrong the general assembly sought to remedy. Swainston v. Am. Family Mut. Ins. Co., 774 N.W.2d 478, 482 (Iowa 2009). When the general assembly places preemption language in more than one relevant section of the chapter, we must consider both sections together in order to ascertain the general assembly’s intent. See Feld v. Borkowski, 790 N.W.2d 72, 83-85 (Iowa 2010) (Appel, J., concurring in part and dissenting in part) (explaining that we may examine an issue that is inextricably intertwined with another issue). Here, the general assembly has placed preemption language in sections 728.5 and 728.11. See Iowa Code §§ 728.5 (excepting theaters from the provisions of this section), .11 (stating chapter 728 shall be the sole regulation of obscene material in the state). Therefore, we must look at these statutes together to determine whether state law preempts the Hamburg ordinance.
The Iowa Constitution was amended in 1968 to provide municipal governments with limited powers of legislative home rule. Iowa Const, art. Ill, § 38A. The home rule amendment provides:
Municipal corporations are granted home rule power and authority, not inconsistent with the laws of the general assembly, to determine their local affairs and government, except that they shall not have power to levy any tax unless expressly authorized by the general assembly.
*195 The rule or proposition of law that a municipal corporation possesses and can exercise only those powers granted in express words is not a part of the law of this state.
Id. “The purpose of the home rule amendment was to give local government the power to pass legislation over its local affairs subject to the superior authority of the legislature.” Hensler, 790 N.W.2d at 584. Thus, “[u]nder legislative home rule, the legislature retains the unfettered power to prohibit a municipality from exercising police powers, even over matters traditionally thought to involve local affairs.” City of Davenport v. Seymour, 755 N.W.2d 588, 538 (Iowa 2008).
Courts have developed the doctrine of preemption to determine whether the legislature permits or prohibits municipal action. Id. Under the doctrine, municipalities generally cannot act if the legislature has directed otherwise. Id. A municipality, however, may set standards “more stringent than those imposed by state law, unless a state law provides otherwise.” Iowa Code § 364.3(3); Sioux City Police Officers’ Ass’n v. City of Sioux City, 495 N.W.2d 687, 693 (Iowa 1993). Nevertheless, “legislative power trumps the power of local authorities” when the legislature exercises its power. Seymour, 755 N.W.2d at 538. We have recognized express preemption, implied conflict preemption, and implied field preemption. Hensler, 790 N.W.2d at 585.
We believe the Iowa Code expressly preempts the City from fully enforcing its ordinance. “Express preemption applies when the legislature has explicitly prohibited local action in a given area.” Id. Express preemption is consistent with the notion that “‘[l]imitations on a municipality’s power over local affairs are not implied; they must be imposed by the legislature.’ ” Seymour, 755 N.W.2d at 538 (quoting City of Des Moines v. Gruen, 457 N.W.2d 340, 343 (Iowa 1990)).
We have previously construed section 728.11 to mean that chapter 728 expressly prohibits a municipality from enacting an ordinance regulating obscenity. In Chelsea Theater Corp. v. City of Burlington, 258 N.W.2d 372 (Iowa 1977), we examined a 1975 Burlington ordinance “defining and prohibiting the sale and distribution of obscene material and public displays of explicit sexual material.” 258 N.W.2d at 373. In response to the enactment of this ordinance, an “adult” movie theater operator brought an action against the city to enjoin the enforcement of the ordinance. Id. The movie theater asked us to determine whether section 728.11’s predecessor, Iowa Code section 725.9 (1975), preempted the city from enacting an ordinance regulating material that is regulated by the state. Id. Burlington contended section 725.9 only preempted the city from enacting an ordinance regulating the dissemination of obscene materials to minors. Id.
After looking at the legislative history of section 725.9, we determined section 725.9 was not limited to the dissemination of obscene materials to minors and instead restricted governmental subdivisions from enacting any local ordinances regulating conduct covered in chapter 725, now chapter 728. Id. at 374. The United States Supreme Court had come to the same conclusion when reviewing a conviction from the United States District Court for the Southern District of Iowa for a violation of a federal statute prohibiting the mailing of obscene materials. See Smith v. United States, 431 U.S. 291, 293-95, 97 S.Ct. 1756, 1760-61, 52 L.Ed.2d 324, 331-32 (1977) (holding section 728.11’s predecessor, section 725.9, preempted all local regulation of obscene materials and was not restricted in application to the dissemination of obscene materials to minors). *196 Accordingly, in Chelsea Theater, we held the Burlington obscenity ordinance was irreconcilable with section 725.9 and thus preempted by state law. 258 N.W.2d at 874.
Thus, the scope of section 728.11 is broad. Since our decision in Chelsea Theater, the general assembly has kept section 728.11 intact. Section 728.11 continues to provide for the uniform application of the provisions of chapter 728 relating to materials covered by chapter 728. By its terms, section 728.11 prohibits local governments from regulating obscene material or the availability of obscene material. The parties did not argue nor do we find a reason to overrule our decision in Chelsea Theater. Moreover, the general assembly has chosen not to overrule Chelsea Theater. When an interpretation by the court is left undisturbed by the general assembly for a substantial period, we have to presume the general assembly agreed with the court’s interpretation. Chi. Cent. & Pac. R.R. v. Calhoun Cnty. Bd. of Supervisors, 816 N.W.2d 367, 374 (Iowa 2012). Therefore, it is quite evident the Iowa Code preempts any local regulation of obscene materials. Accordingly, to the extent the Hamburg ordinance regulates obscene material, it is preempted by state law.
The Hamburg ordinance does not hide its intent to regulate obscene material. It states, “[I]t is neither the intent nor effect of this ordinance to restrict or deny access by adults to sexually oriented materials protected by the First Amendment to the Constitution of the United States of America.” Hamburg, Iowa, Code § 48.010.01. Because the ordinance does not seek to regulate materials protected by the First Amendment, it must necessarily regulate unprotected material. The category of unprotected speech involved here is obscenity. See Miller v. California, 413 U.S. 15, 23, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419, 430 (1973) (“This much has been categorically settled by the Court, that obscene material is unprotected by the First Amendment.”).
The inquiry now turns to whether the general assembly intended section 728.11 to apply to live nude dancing. The City does not argue in its brief that live nude dancing is outside the scope of section 728.11. Instead, the City’s sole argument is that section 728.11 allows the City to issue licenses and permits to persons engaged in activity otherwise covered by the statute. We disagree. The plain language of section 728.11 makes clear that section 728.11 prohibits municipalities, counties, or other governmental units from enacting laws, ordinances, or regulations concerning materials regulated under chapter 728. Section 728.11 goes further and states that all such laws, ordinances, or regulations are void or unenforceable and have no effect. The plain language of section 728.11 also creates an exception for a local government’s zoning authority, not for its licensing or permitting authority. Accordingly, unless a local ordinance is a zoning ordinance, it is preempted to the extent it regulates material regulated by chapter 728. See Estate of Ryan v. Heritage Trails Assocs., Inc., 745 N.W.2d 724, 730 (Iowa 2008) (‘When the statute’s language is plain and its meaning is clear, we look no further.”). The parties and the district court recognized this when the parties agreed and the district court ruled that any part of the ordinance pertaining to zoning would be unaffected by this lawsuit.
Even though the City does not argue that section 728.11 does not apply to live nude dancing, we must reach this issue because the outcome of this case hinges on the applicability of section 728.11 and its interaction with section 728.5. See Feld, 790 N.W.2d at 85 (Appel, J., concurring in part and dissenting in part).
*197 We believe the general assembly intended section 728.11 to apply to live nude dancing. At the time of our decision in Chelsea Theater, the Iowa Code did not contain any provisions specifically regulating the showing of “adult” movies or nude dancing. See Iowa Code ch. 725 (1975). The general assembly began regulating nude dancing and “adult” movie theaters around the time of our decision in Chelsea Theater; See 1976 Iowa Acts ch. 1245(1), § 2505 (codified at Iowa Code § 728.5 (Supp.1977)). The general assembly made it a serious misdemeanor for an owner, manager, or person who exercised direct control over a business holding a liquor license or beer permit to allow nudity or display motion pictures depicting sex acts or nudity in a licensed premise. Id. The statute carved out an exception for theaters and performing arts venues if the displayed nudity or sex act was part of the performance. Id.
After our decision in Chelsea Theater and prior to the passage of the Hamburg ordinance, the general assembly passed three bills amending section 728.5. In 1978, the general assembly made the advertisement of any activity prohibited by the statute a serious misdemeanor. 1978 Iowa Acts ch. 1068, § 6 (codified at Iowa Code § 728.5(6) (1979)). In 1992, the general assembly amended the statute to criminalize live sex acts by minors. 1992 Iowa Acts ch. 1029, § 1 (codified at Iowa Code § 728.5(7) (1993)).
In 1997, the general assembly expanded the scope of persons who could be found guilty of a serious misdemeanor from an owner, manager, or person who exercises direct control over a business holding a liquor license or beer permit to an owner, manager, or person who exercises direct control over a business requiring a sales tax permit. 1997 Iowa Acts ch. 125, § 3 (codified at Iowa Code § 728.5 (Supp. 1997)). The amendment also stopped regulating the display of motion pictures depicting sex acts or nudity. Id. The amendment, however, maintained the exception for theaters. Id. Section 728.5 remained unchanged from this amendment to the time Hamburg passed its ordinance in 2008.[5] It prohibits actual or simulated sex acts and nudity in certain establishments. Iowa Code § 728.5.
These amendments make three important facts clear. First, since section 728.5 first went into effect in 1977, a provision regulating nude dancing has always been part of the obscenity chapter of the Iowa Code. Second, the general assembly has amended the provision regulating nude dancing three times since its enactment and never removed it from the obscenity chapter of the Iowa Code. Third, in regulating nude dancing, the general assembly has continued to exempt theaters. The City does not contend that Mall Real Estate does not operate a theater.
Nonetheless, an argument can be made that the general assembly did not intend section 728.11 to apply to live nude dancing because of the definition of “material” in chapter 728. Section 728.1(3) defines “material” as the following:
[A]ny book, magazine, newspaper or other printed or written material or any picture, drawing, photograph, motion picture, or other pictorial representation or any statue or other figure, or any recording, transcription or mechanical, chemical or electrical reproduction or any other articles, equipment, machines or materials.
*198 Iowa Code § 728.1(3). We acknowledge the commentators who have opined the restriction on local government regulation of obscenity does not appear to apply to live performances because the definition of “material” in section 728.1(3) does not appear to include live performances. See 4 John L. Yeager & Ronald L. Carlson, Iowa Practice: Criminal Law and Procedure § 640, at 159-60 (1979). However, these same commentators also acknowledge it was the general assembly’s intent to regulate live performances and believe the failure of the general assembly to include live performances in the definition of “material” in section 728.1(3) “was in all probability an oversight.” Id. § 631, at 156. We agree that the general assembly intended to regulate live performances as part of the “material” regulated by chapter 728. However, for the reasons explained below we disagree with these commentators’ opinion that the definition of “material” does not include live performances.
It is not unusual for an obscenity statute to explicitly include live performances within the scope of the term “material” or “materials.” See, e.g., Waterman v. Farmer, 84 F.Supp.2d 579, 580-81 (D.N.J.2000) (interpreting a New Jersey statute that included live performances in the definition of “sexually oriented material”); State v. Sorabella, 277 Conn. 155, 891 A.2d 897, 930 (2006) (interpreting a statute defining “child pornography” as “any material involving a live performance or photographic or other visual reproduction of a live performance which depicts a minor in a prohibited sexual act”); Ferrari v. Commonwealth, 448 Mass. 163, 859 N.E.2d 808, 810 & n. 6 (2007) (noting the definition of “matter” includes live performances for the purposes of a criminal statute prohibiting the dissemination of certain material to minors); State v. Foglia, 182 N.J.Super. 12, 440 A.2d 16, 16 (N.J.Super.Ct.App.Div.1981) (interpreting a statute criminalizing the sale of obscene material to minors where the definition of “obscene material” included “live performance”); State v. Bahl, 164 Wash.2d 739, 193 P.3d 678, 689 n. 8 (2008) (en banc) (noting the statutory definition of “erotic materials” includes live performances). Although Iowa Code section 728.1(3) does not specifically mention “live performances,” it is clear from the above cases that the term “material” is often defined to include live performances, particularly when the term is used in an obscenity statute. The question becomes whether the phrase “or any other ... materials” in Iowa Code section 728.1(3) should be interpreted to include live performances even though the legislature did not explicitly mention live performances.
In order to go outside of the plain language of section 728.1(3), we must find an ambiguity in the statute. See Estate of Ryan, 745 N.W.2d at 730. To determine whether a statute is ambiguous, we apply the following rules:
A statute is ambiguous if reasonable minds could differ or be uncertain as to the meaning of the statute. Ambiguity may arise from specific language used in a statute or when the provision at issue is considered in the context of the entire statute or related statutes.
Sherwin-Williams Co. v. Iowa Dep’t of Revenue, 789 N.W.2d 417, 424-25 (Iowa 2010) (citations and internal quotation marks omitted). We also interpret statutes in such a way that portions of it do not become redundant or irrelevant. State v. Gonzalez, 718 N.W.2d 304, 308 (Iowa 2006). Additionally, we do not place undue importance on any single or isolated portion, but instead consider all parts of an enactment together. Swainston, 774 N.W.2d at 482. The general assembly did not enact section 728.1 in isolation, but rather as one piece of the legislation that contained the original provisions of chapter *199 728. See 1976 Iowa Acts ch. 1245(1), §§ 2505, 2801-10 (codified at Iowa Code ch. 728 (Supp.1977)).
On its face, section 728.1(3)’s definition is recursive. A defining term of “material” is “or any other ... materials.” A recognized definition of “material” is “a performer’s repertoire.” Merriam-Webster’s Collegiate Dictionary 765 (11th ed. 2005). This definition would include live performances, including nude and semi-nude dancing. However, one could also reasonably conclude “material” refers to inanimate objects, such as a table or book. Thus, reasonable minds could differ as to the meaning of “materials” when it is used to define the term “material.” Ordinarily, we would apply the “canon of construction noscitur a sociis, which summarizes the rule of both language and law that the meanings of particular words may be indicated or controlled by associated words.” Peak v. Adams, 799 N.W.2d 535, 547 (Iowa 2011) (citation and internal quotation marks omitted). Applying this canon, we would examine the longer phrase: “or any other articles, equipment, machines or materials.” Application of this canon could lead one to conclude that the defining term “materials” must refer to inanimate objects. However, we cannot apply this canon if its application thwarts legislative intent or makes the general words meaningless. 2A Norman J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 47:16, at 355 (7th ed. 2007); accord Wright v. State Bd. of Eng’g Exam’rs, 250 N.W.2d 412, 414 (Iowa 1977). For several reasons, we believe this is one of those occasions when the canon is not applicable.
First, application of the canon would lead to an absurd result that would thwart the legislative intent. See Harden v. State, 434 N.W.2d 881, 884 (Iowa 1989) (“We seek a reasonable interpretation that will best effect the purpose of the statute and avoid an absurd result.”). In chapter 728, the general assembly prohibited any person from disseminating obscene material to minors. See Iowa Code § 728.2. One of the practical effects of this limitation is that it prohibits the operator of an adult movie theater displaying films containing obscene sex acts from displaying such films to a minor. Indeed, the movie theater operator is prohibited from even admitting a minor to the premises. Id. § 728.3. However, if we did not construe “material” to include live performances, then that same minor could view the same obscene sex act live in an establishment falling under the theater exception of section 728.5. We find it hard to believe the general assembly intended to permit minors to view live obscene sex acts but prohibit them from viewing the same obscene sex act on a movie theater screen. Thus, to construe the definition of “material” to not include live performances would thwart legislative intent.
Second, “or other ... materials” must necessarily mean something unique from the rest of the defining terms. The list of items contained in section 728.1(3) is all-inclusive. It covers all conceivable inanimate objects that could constitute “material” for the purposes of the obscenity chapter. If the legislature did not give “or other ... materials” a meaning other than an inanimate object, the word would become surplusage. See Iowa Auto Dealers Ass’n v. Iowa Dep’t of Revenue & Fin., 301 N.W.2d 760, 765 (Iowa 1981) (stating that we give effect to all the words in the statute unless no other construction is reasonably possible). Therefore, “or other ... materials” must refer to something other than an inanimate object, at least in the context of the obscenity chapter.
Third, the uniformity provision in section 728.11 is a strong indication of the general assembly’s desire to establish statewide regulation of obscenity. The *200 placement of section 728.5, which pertains to live performances in the obscenity chapter, is indicative of the general assembly’s intent to include its regulation of live performances in this statewide scheme. See In re Det. of Garren, 620 N.W.2d 275, 280 (Iowa 2000) (“The legislature’s intent to enact a civil statute is also implied from the placement of the [Sexually Violent Predator Act] among code chapters dealing with the mentally ill....”); State v. Iowa Dist. Ct., 616 N.W.2d 575, 579 (Iowa 2000) (holding the placement of a statute mandating a minimum sentence for certain felonies in the chapter governing felonies rather than the chapter governing sentence reduction indicated a legislative intent to operate as a minimum sentence for felons and not a restriction on the power of a parole board); see also NLRB v. Federbush Co., 121 F.2d 954, 957 (2d Cir.1941) (“Words are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used.”). We must read chapter 728 as a whole. By including within the obscenity chapter a section pertaining to live performances of a sexual nature, it is reasonable to infer based on the particular characteristics of chapter 728 that the general assembly intended live performances to be within the scope of the term “or other ... materials.”
Finally, the underlying issues in this case involve delicate issues of free speech under the Iowa Constitution. The doctrine of constitutional avoidance counsels us to construe section 728.1(8) in a fashion to avoid constitutional issues. See Simmons v. State Pub. Defender, 791 N.W.2d 69, 74 (Iowa 2010); State v. Nail, 743 N.W.2d 585, 539 (Iowa 2007); see also Ashwander v. Tenn. Valley Auth., 297 U.S. 288, 345-48, 56 S.Ct. 466, 482-84, 80 L.Ed. 688, 710-12 (1936) (Brandéis, J., concurring) (famously observing that constitutional adjudication is a matter of “great gravity and delicacy” and discussing the principles of constitutional avoidance). In considering whether a local ordinance is preempted under state law, the preemption question is regarded as a question of statutory construction. See Puerto Rico Tel. Co. v. Municipality of Guayanilla, 450 F.3d 9, 13 (1st Cir.2006); N.J. Payphone Ass’n, Inc. v. Town of W. N.Y., 299 F.3d 235, 239 n. 2 (3d Cir.2002). Thus, unlike an ordinary preemption case, where a court construes statutes to avoid preemption, a court faced with an important constitutional question should seek to interpret statutes in a fashion to avoid constitutional issues.
Accordingly, we find the general assembly intended to include live performances in the definition of “material” for the purposes of chapter 728. Therefore, to be consistent with our construction of section 728.11 in Chelsea Theater, we must find that section 728.11 preempts the City from enacting any ordinance regulating nude dancing in a theater. Until the general assembly amends section 728.11, the City is without authority to regulate nude dancing.[6] Accordingly, we reverse the judgment of the district court and remand this case for the court to enter an order enjoining the City from enforcing its ordinance regulating nude dancing in the Hamburg Theatre. Our ruling today does not prevent the City from enforcing its laws or state laws dealing with controlled substances, prostitution, loitering, littering, the service of alcoholic beverages to adults *201 or minors, the consumption of alcoholic beverages by minors, or valid zoning laws.
V. Disposition.
Having found that state law preempts the City of Hamburg’s ordinance because the ordinance attempts to regulate nude dancing, we reverse the judgment of the district court and remand the case to the district court with instructions to enter an order enjoining the City of Hamburg from enforcing its ordinance against Mall Real Estate.
REVERSED AND REMANDED WITH INSTRUCTIONS.
All justices concur except CADY, C.J., and WATERMAN, J., who dissent separately and MANSFIELD, J., who ' takes no part.

. The ordinance also classifies adult bookstores, adult novelty stores, adult video stores, adult motels, adult motion pictures theaters, and seminude model studios as sexually oriented businesses. Hamburg, Iowa, Code § 48.030 (Dec. 8, 2008). Further, the ordinance defines "nudity or a state of nudity” as:
*192 The showing of the human male or female genitals, pubic area, vulva, anus, anal cleft, or cleavage with less than a fully opaque covering, or the showing of the female breast with less than a fully opaque covering of any part of the nipple and areola.
Id. § 48.020.14. Finally, the ordinance defines “semi-nude or state of semi-nudity” as:
A state of dress in which opaque clothing covers no more than the genitals, anus, anal cleft, cleavage, pubic area, vulva, as well as the nipple and areola of the female breast, as well as portions of the body covered by supporting straps or devices. This definition shall not include any portion of the cleavage of the human female breast exhibited by a dress, blouse, skirt, leotard, bathing suit, or other wearing apparel provided that the areola and nipple are not exposed in whole or in part.
Id. § 48.020.18.

. Iowa Code section 728.5 prohibits total nudity in places of business required to obtain a sales tax permit. Iowa Code § 728.5 (2009). The Eighth Circuit Court of Appeals held section 728.5 does not violate the First Amendment to the United States Constitution. See Farkas v. Miller, 151 F.3d 900, 905 (8th Cir.1998).

. The ordinance’s definition of "employee" includes performers. Hamburg, Iowa, Code § 48.020.11.

. All references to the Iowa Code are to the 2009 Code unless otherwise noted.

. In 2010, the general assembly amended the statute again. See 2010 Iowa Acts ch. 1078, § 2 (codified at Iowa Code § 728.5 (2011)). This amendment renumbered the subsections of section 728.5 and made the theater exception inapplicable to certain portions of the statute. See id.

. Although we conclude the general assembly intended nude and seminude dancing to be within the scope of section 728.11, we do not express any opinion as to the constitutionality of any provision in chapter 728 because it is beyond the scope of this appeal.