*609 MANSFIELD, Justice.
This case asks us to consider the juvenile court’s authority in a delinquency proceeding to enter a consent decree, over the State’s objection, placing a child in the legal custody of juvenile court services, with the department of human services as payment agent, for purposes of placement in a residential facility. For the reasons set forth herein, we conclude the legislature did not grant this authority to juvenile courts in Iowa Code section 232.46, and therefore we sustain the writ of certio-rari, affirm the decision of the court of appeals, and remand this case for further proceedings consistent herewith.
I. Background Facts and Proceedings.
After receiving reports that fifteen-year-old J.W.R. and his thirteen-year-old brother engaged in sex acts with their twelve-year-old sister, the State filed a petition in March 2011, alleging that J.W.R. committed the delinquent acts of sexual abuse in the third degree and incest.[1] J.W.R. was removed from the family home and detained at the Polk County Juvenile Detention Center. During the pendency of the proceeding, J.W.R. was moved first to the Polk County Youth Shelter and then to Four Oaks, a shelter located in Iowa City. This placement outside J.W.R.’s home was based on the court’s concern for the safety of the juvenile’s sister, who still lived at home, and concern that J.W.R. might reof-fend in a less restrictive environment. On October 19, 2011, J.W.R. entered an Alford plea to the incest allegation, and the State dismissed the sexual abuse charge.
A juvenile court officer (JCO) recommended J.W.R. be adjudicated a delinquent and placed in a residential treatment facility for sex offenders. The JCO’s recommendation was based partly on an evaluation of J.W.R. by a psychologist who diagnosed J.W.R. with Asperger’s disorder and found that J.W.R. “was not safe out in the community given his level of accepted responsibility, impulsivity and his general denial.” The JCO added that he had been “asked if a Consent Decree would be appropriate for [J.W.R.], unfortunately, there is not a section in the Code that allows a transfer of custody and placement for children under a Consent Decree.”
At the dispositional hearing during the afternoon following J.W.R.’s Alford plea of guilty, J.W.R. offered the testimony of a child psychiatrist, Dr. Kevin Took, who had reviewed the mental health records and met with J.W.R. Dr. Took generally concurred in the diagnosis of J.W.R., although he preferred to describe it as pervasive developmental disorder not otherwise specified (PDD-NOS).[2] He strongly recommended against placing J.W.R. in a sex offender treatment facility. He concluded that because of J.W.R.’s developmental disorder and his lack of history of other inappropriate sexual behavior, he would likely be victimized himself or learn more inappropriate sexual behavior if placed in such a facility. Dr. Took opined that a community-based program focusing on improving all of J.W.R.’s social skills would be the most effective and appropri *610 ate under the circumstances. Dr. Took recommended either a family placement or, if no family placement was available, foster care.
J.W.R. requested the court to enter a consent decree pursuant to Iowa Code section 232.46. The State argued that J.W.R. should be adjudicated a delinquent and placed in a residential treatment facility. The State maintained that “if the Court decides to place [J.W.R.],” a consent decree would be inappropriate.
The juvenile court issued a consent decree on October 21, 2011, withholding adjudication that J.W.R. had committed a delinquent act. The court directed that J.W.R. be placed under the supervision of juvenile court services to receive a treatment program. It ordered that J.W.R. remain in the Iowa City youth shelter pending placement in a relative’s home or a foster home. The court also indicated that a further hearing would occur on November 17.
The State filed a motion to enlarge, arguing that the court did not have the authority to place J.W.R. outside the family home under a consent decree, citing In re C.D.P., 315 N.W.2d 731 (Iowa 1982), and Iowa Code sections 232.46 and 232.57. The juvenile court then issued an order on November 15 reaffirming that “placement outside of the family home is an option which should be considered” and noting that it would also consider placing J.W.R. in a psychiatric medical institute (PMI) for children.
Further hearings were held in late November and early December. The JCO had supplemented his predisposition report after exploring various placement options for J.W.R. The JCO reported that J.W.R. could not be placed back into his own home because the victim was living there and a no-contact order was in place. J.W.R.’s father was willing to take custody of J.W.R., but the father’s work schedule would have left J.W.R. unsupervised for most of the day. J.W.R.’s aunt and uncle also expressed an interest in providing J.W.R.’s care, but J.W.R.’s brother had already been placed with them. Because the two boys had acted together in committing the offenses against their sister, it was not recommended that they live together. The JCO had also investigated the possibility of other individual foster care placements, but at that time there were no foster homes willing or available to match J.W.R.’s needs or circumstances. Three potential PMI placements had also declined because J.W.R. needed sex offender treatment.
JCO had located two group foster care placements that he found suitable for J.W.R. As he explained, “Both programs specialize in sex offending issues and have or did have clients with diagnosis of Pervasive Development Disorder/Asperger’s.” The JCO therefore recommended that J.W.R. be placed in either of these residential treatment/group foster care facilities. The JCO noted that these programs do not necessarily use a “Positive Peer Culture” and therefore would not raise the concerns voiced by Dr. Took about J.W.R. being subject to abuse or learning behavior from other sex offenders.
On December 5, 2011, over the State’s objection that it lacked authority to do so, the court continued the consent decree and ordered J.W.R. placed in a group foster care facility. Specifically, the juvenile court ordered:
Adjudication is withheld and the child shall remain on his Consent Decree as previously ordered by the Court.
The child is placed in the temporary legal custody of Juvenile Court Services, with the Department of Human Services *611 as payment agent, for the purposes of placement in residential treatment.
The State filed a petition for writ of certiorari, contending the juvenile court exceeded its authority by entering a consent decree that placed J.W.R. in residential treatment. We granted the writ and transferred the case to the court of appeals. The court of appeals sustained the writ of certiorari, reasoning: “In the instant case, the juvenile court ordered legal custody of [J.W.R.] to juvenile court services with the DHS ‘as payment agent’ for purposes of placement in residential treatment. This disposition is not permissible under section 232.46.” One judge on the panel dissented. J.W.R. sought further review, and we granted his application.
II. Scope of Review.
Certiorari is appropriate when a lower court or tribunal has exceeded its authority or otherwise acted illegally. Iowa Ct. R. 1.1401, Fisher v. Chickasaw Cnty., 553 N.W.2d 331, 333 (Iowa 1996). Our review is for corrections of errors at law. State Pub. Defender v. Iowa Dist. Ct., 747 N.W.2d 218, 220 (Iowa 2008). “Illegality exists when the court’s findings lack substantial evidentiary support, or when the court has not properly applied the law.” Id. (citation and internal quotation marks omitted).
III. Discussion.
When a juvenile is believed to have committed a delinquent act, the county attorney may initiate judicial proceedings by filing a petition. Iowa Code § 232.35(1) (2011). The “consent decree,” however, provides a way for those proceedings to be suspended short of an adjudication of delinquency:
At any time after the filing of a petition and prior to entry of an order of adjudication pursuant to section 232.47, the court may suspend the proceedings on motion of the county attorney or the child’s counsel, enter a consent decree, and continue the case under terms and conditions established by the court. These terms and conditions may include prohibiting a child from driving a motor vehicle for a specified period of time or under specific circumstances, or the supervision of the child by a juvenile court officer or other agency or person designated by the court, and may include the requirement that the child perform a work assignment of value to the state or to the public or make restitution consisting of a monetary payment to the victim or a work assignment directly of value to the victim.
Id. § 232.46(1).
The consent decree may remain in force for up to a year and may be extended for a second year. Id. § 232.46(4). If the child fails to comply with the terms and conditions, he or she may be “held accountable as if the consent decree had never been entered.” Id. § 232.46(5). However, if the child complies with the terms and conditions for the required time, the original petition may not be reinstated and the child may not be proceeded against for any delinquent act alleged in the petition. Id. § 232.46(5)-(6).
The consent decree is essentially a bipartite arrangement between the juvenile court and the allegedly delinquent child that is memorialized in a court order (hence the term “consent decree”).[3] Even *612 if the county attorney objects to the consent decree, the juvenile court may enter it over the county attorney’s objections. Id. § 232.46(3). And nothing requires that the consent decree be approved by the child’s parents, so long as the parents are informed of the consequences of the decree and the child “has voluntarily and intelligently agreed to the terms and conditions of the decree.” Id.
The dispute in this case centers on the meaning of “terms and conditions” in section 232.46(1). J.W.R. appears to contend that the meaning is open-ended, so long as the court acts in the best interests of the child. In his appellate brief, J.W.R. writes, “There is nothing in Iowa Code § 232.46 which prohibits any specific term and condition which the Court deems appropriate.” However, at oral argument, J.W.R.’s counsel conceded there were some limits on the terms and conditions that may be imposed in a consent decree.
The State counters that the phrase “terms and conditions” needs to be read in context and refers to the sort of terms and conditions that would be imposed on a child who is returning to the community, such as driving restrictions, supervision, or restitution. In other words, in the State’s view, ordering the child to a residential facility would not be a permissible term and condition.
Here, the juvenile court agreed with J.W.R. and ultimately used the consent decree procedure to place him in the temporary custody of juvenile court services so he could enter a group foster care facility where he could receive treatment for his sex offenses and his mental health condition. We believe the phrase “terms and conditions” is ambiguous and needs to be interpreted within its statutory context.
“A statute is ambiguous if reasonable minds could differ or be uncertain as to the meaning of the statute. Ambiguity may arise from specific language used in a statute or when the provision at issue is considered in the context of the entire statute or related statutes.”
Mall Real Estate, L.L.C. v. City of Hamburg, 818 N.W.2d 190, 198 (Iowa 2012) (quoting Sherwin-Williams Co. v. Iowa Dep't of Revenue, 789 N.W.2d 417, 424-25 (Iowa 2010)); see also Iowa Code § 4.1(38) (“Words and phrases shall be construed according to the context and the approved usage of the language.... ”). The first sentence of section 232.46(1) states that the court may “enter a consent decree, and continue the case under terms and conditions established by the court.” Iowa Code § 232.46(1) The next sentence of the section goes on, “These terms and conditions may include....” Id. The remainder of the sentence then furnishes three specific examples of what a consent decree may include: (1) “prohibiting a child from driving a motor vehicle for a specified period of time or under specific circumstances”; (2) “the supervision of the child by a juvenile court officer or other agency or person designated by the court”; (3) “the requirement that the child perform a work assignment of value to the state or to the public or make restitution consisting of a monetary payment to the victim or a work assignment directly of value to the victim.” Id.
In our view, the second sentence of section 232.46(1) is not mere window dressing. See id. § 4.4(2) (stating that it is presumed “[t]he entire statute is intended to be effective”); Mall Real Estate, 818 N.W.2d at 198 (indicating that we “interpret statutes in such a way that portions of [them] do not become redundant or irrelevant”). Instead, we conclude that the second sentence provides needed context and illustrates the types of conditions the juvenile court may impose. See Eyecare v. Dep't of Human Servs., 770 N.W.2d 832, 837 (Iowa *613 2009) (“Generally, ‘the verb “includes” imports a general class, some of whose particular instances are those specified in the definition.’ ” (quoting Helvering v. Morgan’s, Inc., 293 U.S. 121, 125 n. 1, 55 S.Ct. 60, 61 n. 1, 79 L.Ed. 232, 235 n. 1 (1934))). None of the examples given in section 232.46(1) involve changing the placement or custody of the child.[4]
There are additional reasons why we conclude the terms and conditions authorized by section 232.46(1) do not include transfer of custody and placement in a residential facility. First, there is no mechanism in the law for funding a residential placement in a group foster home under a section 232.46 consent decree. The juvenile court ordered such funding in this case, but it cited no authority for doing so. Section 234.35, cited by J.W.R.’s counsel, indicates that the department of human services shall pay the cost of care in nine specifically described circumstances, none of which is present here. These circumstances include when a court has transferred custody of the child to the director of human services, as in a child-in-need-of-assistance (CINA) proceeding, or when a court has entered an order under section 232.52(2)(d) transferring custody of the child following an adjudication of delinquency. See Iowa Code § 234.35(1)(6), (e). In short, section 234.35 supports the State’s position in this case, because it specifically requires the State to pay for group foster care that is ordered following an adjudication of delinquency or CINA, but it does not mention consent decrees at all. See id. § 232.35(l)(e).
Another possible argument, not raised by J.W.R., is that section 232.141 (4)(c) authorizes state funding here. Section 232.141(4) provides:
4. Upon certification of the court, all of the following expenses are a charge upon the state to the extent provided in subsection 5:
a. The expenses of transporting a child to or from a place designated by the court for the purpose of care or treatment.
b. Expenses for mental or physical examinations of a child if ordered by the court.
c. The expenses of care or treatment ordered by the court.
However, we believe the reference in subsection (c) does not include group foster care. We know this because section 232.143 requires planning for group foster care expenditures to be coordinated with “planning for services paid under section 232.141, subsection 4.” See Iowa Code § 232.143(2). Thus, section 232.143 indicates that group foster care expenditures and “care or treatment” expenditures under section 232.141(4) are two separate things.
Because the legislature did not authorize funding for residential placements to group foster homes under consent decrees, it logically follows that the legislature did not intend such placements to occur. As the court of appeals put it, “If consent decrees could result in foster care placement, then the legislature presumably would have included them in [the section 234.35(l)(e) ] payment provision.” It is true that the State is not separately challenging the juvenile court’s directive that it *614 pay for J.W.R.’s group foster care, but rather is challenging the court’s overall authority to order that disposition. Nonetheless, as a matter of statutory interpretation, we should be hesitant to read a statute as authorizing a disposition for which there are no available means of payment.[5]
In interpreting the phrase “terms and conditions” in section 232.46, it is fair for us to consider that the legislature provided no way to pay for residential placements ordered under consent decrees, as opposed to residential placements ordered by other means. We try to read statutes to avoid conflicts and to reach reasonable results. See Iowa Code §§ 4.4(3), .7; Iowa Right to Life Comm., Inc. v. Tooker, 808 N.W.2d 417, 428 (Iowa 2011) (“Of course, we do not interpret statutes in isolation, especially when they are in apparent conflict.”).
Second, section 232.46 speaks in terms of the child “compl[ying] with the express terms and conditions of the consent decree for the required amount of time.” Iowa Code § 232.46(5). The outer time limit is no more than.two years. Id. § 232.46(4). These concepts make sense if one is talking about loss of a privilege, like driving; or being subjected to reporting and supervision; or undertaking a community service obligation or making restitution. But their logic is less apparent when one is talking about placement in a group foster home. We normally would not use the verb “complying with” to describe what the child is doing in that circumstance. Also, what would happen when the two-year maximum time period runs out and the child still is in need of treatment or has nowhere else to go? While probation-like conditions normally have a deadline, we would not think of treatment having such a deadline.
Third, there is an apparent parallel between section 232.46, the consent decree provision for delinquency proceedings, and section 232.100, the “suspended judgment” provision for child in need of assistance (CINA) proceedings. Section 232.100 is worded similarly to 232.46 and provides:
After the dispositional hearing the court may enter an order suspending judgment and continuing the proceedings subject to terms and conditions imposed to assure the proper care and protection of the child. Such terms and conditions may include the supervision of the child and of the parent, guardian or custodian by the department of human services, juvenile court office or other appropriate agency designated by the court.
Iowa Code § 232.100. This is considered the “least” restrictive alternative available following a CINA adjudication, in contrast with section 232.102 which provides for “[tjransfer of legal custody of child and placement.” See Iowa Code §§ 232.99(4), .102.
The similar design of section 232.46 and section 232.100 is worth noting. Both allow the court to stop the proceeding (either the delinquency adjudication or the CINA disposition) and instead impose terms and conditions that “may include” supervision. This parallelism dates back to 1978, when our legislature made a comprehensive revision of the juvenile justice laws. See 1978 Iowa Acts ch. 1088 (codified at Iowa Code ch. 229 (1979)); In re P.L., 778 N.W.2d 33, 36-37 (Iowa 2010) (discussing this revision). As enacted in 1978, section 232.46’s predecessor provided:
*615 At any time after the filing of a petition and prior to the entry of an order of adjudication ..., the court may suspend the proceedings on motion of the county attorney or the child’s counsel, enter a consent decree, and continue the case under terms and conditions established by the court. These terms and conditions may include the supervision of the child by a juvenile probation officer or other agency or person designated by the court.
1978 Iowa Acts ch. 1088, § 26(1). And section 232.100’s predecessor provided:
After the dispositional hearing the court may enter an order suspending judgment and continuing the proceedings subject to terms and conditions imposed to assure the proper care and protection of the child. Such terms and conditions may include the supervision of the child and of the parent, guardian or custodian by the department of social services, juvenile probation office or other appropriate agency designated by the court.
Id. § 56.
Section 282.100, like section 232.46, does not expressly limit the terms and conditions the juvenile court can impose. But consistent with the statutory structure, we have said that when there is a suspended judgment, the child remains with the parent. In re Long, 313 N.W.2d 473, 476 (Iowa 1981). We have the same structure here, as well as similar terminology (i.e., “terms and conditions” and “[sjuch terms and conditions may include the supervision of the child”).
Fourth, our precedents support this interpretation of section 232.46(1). In In re C.D.P., the juvenile court initially ordered the child, with his and the county’s consent, to be placed at a specific facility. 315 N.W.2d at 732. Later, the juvenile court also ordered transfer of the child’s custody to the State, ordered that the child remain in the same facility, and ordered that the State pay the costs of the child’s placement retroactively to his initial admission. Id. On the State’s appeal, we held that the direction to place the child in a specific facility was improper because section 232.52(2)(<i) only gave the juvenile court authority to “direct the type of placement,” not to “direct a specific placement.” Id. at 733. We also noted that, notwithstanding the county and the juvenile’s argument that the disposition had been ordered by consent under section 232.46, “if [the county] wishes to pursue the proceeding, [the county] must secure an adjudication of delinquency in order to support the disposition.” Id. If a consent decree could bring about an out-of-home placement, we would not have directed the county to “secure an adjudication of delinquency” upon remand to obtain the out-of-home disposition. See id.; see also In re Rousselow, 341 N.W.2d 760, 762 (Iowa 1983) (describing a consent decree as “a juvenile court decree whereby the case may be continued, the child placed on probation under supervision, with the child being required to make restitution to the victim or performing a work assignment of equivalent value for the victim or state”).
Finally, under J.W.R.’s interpretation of section 232.46(1), a child could potentially be taken away from his or her parents without the parents’ consenting to the action or even having an opportunity to be heard. That would raise serious due process concerns. “The parent-child relationship is constitutionally protected.” In re H.L.B.R., 567 N.W.2d 675, 677 (Iowa Ct.App.1997). True, a child also can be removed under some circumstances if the child is adjudicated CINA or if the child is adjudicated to be delinquent. But in the former instance, the parents will be parties to the proceeding, and in both of these instances, evidence will be presented, and *616 the court will render a decision based on specific legal standards. See Iowa Code § 232.2(6) (defining “child in need of assistance”); id. § 232.2(12) (defining “delinquent act”); id. § 232.47 (setting forth rules and procedures for an adjudication of delinquency); id. § 232.50 (requiring a dis-positional hearing after an adjudication of delinquency); id. § 232.52 (setting forth possible dispositions and requiring the court to enter “the least restrictive disposi-tional- order appropriate in view of the seriousness of the delinquent act”); id. § 232.96 (setting forth rules and procedures for a CINA hearing); id. § 232.99 (requiring a dispositional hearing after a CINA adjudication and requiring “the least restrictive disposition appropriate considering all the circumstances of the case”). The consent decree process, by contrast, simply involves a court exercising its discretion and obtaining the agreement of the child. Normally, we interpret statutes so they do not present constitutional difficulties. See id. § 4.4(1).
No due process claim has been raised in this case, and there is no indication that either parent is opposed to what the juvenile court ordered here. Yet that is not the point. We need to take constitutional requirements into account when we interpret ambiguous language, such as “terms and conditions.” Section 232.46(3) states, “A consent decree shall not be entered unless the child and the child’s parent, guardian or custodian is informed of the consequences of the decree by the court and the court determines that the child has voluntarily and intelligently agreed to the terms and conditions of the decree.” In short, the legislature specifically provided that the child had to agree to the decree but the parent only had to be informed of its consequences. In this tight space, there is no room to insert a provision for a hearing where the parent objects. We would be rewriting the statute. Instead, to avoid due process problems, we should interpret the more elastic phrase “terms and conditions” as not authorizing a change of custody and a group foster care placement.
J.W.R. argues that any ambiguities in section 232.46(1) should be interpreted in favor of the child. Section 232.1 provides,
“This chapter shall be liberally construed to the end that each child under the jurisdiction of the court shall receive, preferably in the child’s own home, the care, guidance and control that will best serve the child’s welfare and the best interest of the state.”
Notably, this language refers to both the interest of the child and that of the state. In any event, as we have said in another context, the concept of the child’s best interests must be applied within the framework established by the legislature. See In re P.L., 778 N.W.2d 33, 37 (Iowa 2010). We believe the overall statutory design here compels the conclusion that terms and conditions do not include a change of custody and placement in a residential facility.[6]
IV. Conclusion.
For the foregoing reasons, we find that section 232.46 is a less restrictive *617 alternative, analogous to the suspended judgment, whereby a child can remain with his parent or parents under supervision, restrictions, or restitutionary obligations without being adjudicated delinquent. It does not authorize a juvenile court to change temporary custody, send a child to a residential facility, and require State payment.
This does not mean we have any substantive disagreement with J.W.R.’s placement. The issue is not whether J.W.R. should be placed in group foster care where he can receive appropriate treatment. The issue is whether a juvenile court can bring about that result by ordering a transfer of custody, payment by the State, and a residential placement pursuant to section 232.46, the consent decree provision of the juvenile justice chapter. In our view, the legislature established the framework, and it must be followed here. See Anderson v. State, 801 N.W.2d 1, 1 (Iowa 2011).
J.W.R. could be placed in the group foster home under section 232.52(2)(d) following an adjudication of delinquency. Alternatively, and without an adjudication of delinquency, it may be possible to place him there as a child in need of assistance under section 232.2(6)(i). Indeed, J.W.R. makes this very point on appeal, stating,
It is unfortunate that the State chose not to handle this matter as a Child in Need of Assistance proceeding rather than a delinquency. A [CIÑA] proceeding would have allowed a lot more flexibility in treating the needs of this entire family.
As detailed above, a large part of the problem here is that for reasons beyond his control, J.W.R. cannot be placed -with any of his relatives.
Lastly, we are not deciding that a juvenile court can never use its consent decree authority to arrange for a child to receive treatment out of the home. We leave that question for another day. We are holding, simply, that the decree in this case involving a residential placement that required a change of custody and State payment exceeded the court’s authority under section 232.46.[7]
We sustain the writ. We remand this case to the juvenile court for further proceedings consistent herewith.
WRIT SUSTAINED; COURT OF APPEALS DECISION AFFIRMED; CASE REMANDED.
All justices concur except APPEL, WIGGINS, and HECHT, JJ., who dissent.

. The State also filed a petition against J.W.R.’s brother. A consent decree was entered in his case, and he went to live with his aunt and uncle.

. Pervasive developmental disorders (PDDs) include several conditions, ranging from the relatively mild — Asperger’s—to the most severe — childhood disintegrative disorder — and includes autism. PDDs are characterized by delays in the development of multiple basic functions including socialization and communication. Pervasive developmental disorder not otherwise specified (PDD-NOS) refers to a PDD which is more severe than Asperger’s but not as severe as autism.

. The child may move the court to enter a consent decree, in which case he or she bears the burden to show that entry of a decree is appropriate and the ultimate decision whether to grant the juvenile’s request rests in the juvenile court’s discretion. In re Matzen, 305 N.W.2d 479, 481-82 (Iowa 1981).

. The original list included only one item— "the supervision of the child by a juvenile probation officer or other agency or person designated by the court.” See 1978 Iowa Acts ch. 1088, § 26. Still, the point remains that the list has never included conditions that amount to a change in where the child will live and who will be legally responsible for him or her.

. The juvenile court appointed counsel for J.W.R. based on his mother’s financial affidavit. There is no indication that the parents would be able or willing to pay for group foster care for J.W.R.

. In his application for further review, J.W.R. argues that it would violate the Equal Protection Clause of the United States Constitution for him to be denied a consent decree when his brother was granted one. This argument was not raised either in J.W.R.’s appellee brief or in the juvenile court, and therefore we do not reach it. See Chamberlain, L.L.C. v. City of Ames, 757 N.W.2d 644, 648 (Iowa 2008) (“When presented with an application for further review from the court of appeals, we may consider 'all of the issues properly preserved and raised in the original briefs.' " (quoting Bokhoven v. Klinker, 474 N.W.2d 553, 557 (Iowa 1991))).

. Here, the consent decree involved removing J.W.R. from his parents and putting him in a group foster home for treatment purposes. The State objected to this below, stating among other things, "The State believes that the Court's grant of a Consent Decree requires the return of the child to his paternal or maternal home.” On appeal, the State urges that residential treatment may never be ordered under a consent decree. As we often do in deciding appeals, we have accepted the State’s argument in part. See, e.g., State v. Clark, 351 N.W.2d 532, 536 (Iowa 1984) ("We go with Clark’s argument only part of the way.”), superseded by statute, 1986 Iowa Acts ch. 1220, § 2, as recognized in State v. Chesmore, 474 N.W.2d 551, 552 (Iowa 1991). We conclude that under the circumstances presented here, where residential treatment requires a change of custody, the decree exceeded the juvenile court’s authority under section 232.46. We do not and need not decide whether the State's argument is correct in its entirety.