**IN THE COURT OF APPEALS OF IOWA**

No. 14-1972
Filed February 25, 2015

**IN THE INTEREST OF J.F.,**
**Minor Child,**

**E.F., Father,**
**Appellant.**

_____

Appeal from the Iowa District Court for Clinton County, Phillip J. Tabor, District Associate Judge.

A father challenges adjudication and removal of his child. **AFFIRMED.**

Judd Parker of Parker Law Office, Clinton, for appellant father.

Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney General, Mike Wolf, County Attorney, and Cheryl Newport, Assistant County Attorney, for appellee State.

Taryn Purcell of Blair & Fitzsimmons, Dubuque, attorney and guardian ad litem for minor child.

Considered by Vogel, P.J., and Doyle and McDonald, JJ. Tabor, J. takes no part.

**PER CURIAM.**

A father appeals the juvenile court's adjudicatory and dispositional orders adjudicating his child a child in need of assistance and continuing the child's removal from his care. The State argues the father failed to preserve for our review the issues he asserts on appeal. We agree with the State and accordingly affirm the juvenile court's orders.

### I. Background Facts and Proceedings.

On August 29, 2014, the State filed petition asserting J.F., born May 2014, was a child in need of assistance (CINA) as defined in Iowa Code sections 232.2(6)(b), (c)(2), (n), and (o) (2013). An affidavit provided in support thereof, given by an Iowa Department of Human Services (Department) case worker, stated the child "was positive for THC in a cord blood screen at birth," and the mother had agreed to the safety plan initiated by the Department. In the months of July and August 2014, the Department tried to reach the mother without success. The Department requested the State file a CINA petition "to assure the child is safe in his parents' care."

A prehearing conference was set for September 11, 2014, and held that day. Thereafter, a "Stipulation and Record of the Prehearing Conference" was filed noting service had been attempted on the parents but their whereabouts were unknown and that the Department had "a PSA—nationwide." An adjudicatory hearing was also set for October 7, 2014.

It was believed the parents were hiding from the Department. The mother was staying with her mother in Illinois. The mother was served with the petition the day before the adjudicatory hearing.

The adjudicatory hearing was held as scheduled, and both parents appeared before the court. There, the State gave the father "a packet with the petition, the accompanying information, and an application for court-appointed attorney." The court asked the parents if they wanted to have attorneys appointed for them in the case, and the court took a brief recess to allow the parents to complete applications for court-appointed counsel. However, the parents thereafter decided, and the court confirmed, that they did not want to complete the forms. The court advised the parents:

> Why don't you hang on to those applications, because as we get further into this case, if you decide you would like to have an attorney, you can still fill those out at any time . . . and the court will review them. If you decide to hire your own attorney, that's completely fine too. The court would just ask that once you do get an attorney hired, they enter an appearance so the court knows who will be representing you.

The court then asked the State if it wished to proceed at that time, and the State affirmed. The State asked the court to take judicial notice of the petition and the affidavit attached thereto, and it requested the court enter into evidence the Department's June 2014 case summary detailing the report that the child tested positive for marijuana at birth, the Department's investigation and determination that the report was founded, and the safety plan initiated by the Department and agreed to by the mother. The court admitted the summary into evidence.

The court asked the parents if they had any evidence to present, and they stated they did not. The court then advised the parents:

> We're here for an adjudication. You've indicated you do not want to apply for court-appointed attorneys, and you are not currently represented. The court has received an exhibit that would indicate,

if taken as true, the court could adjudicate your child, or the child, to be a [CINA]. At that point, the court would have jurisdiction over the child, and the court would have jurisdiction over you, and therefore, you would have to tell this court where the child is so that the [Department] can check to see that the child is safe.

After some discussion, the parents affirmed they understood the purpose of the hearing.

Ultimately, the parents refused to tell the court where the child was or to make the child available to the Department so that it could determine the child was safe. The court asked the parents if they wanted to make a statement, and the father gave a long statement, stating at one point:

My son, I never had what's—what's happening with this case. As far as I know, I'm suppose—once I have these papers in my hand, it gives me five days to figure out, to find a baby-sitter to come to court. I came . . . here today and got these papers in my hands about [ten] minutes ago. I do know that my—my rights were violated. I also do know that I can take this to a federal court in Cedar Rapids and have them deal with it and get an injunction against these people for . . . invading my privacy and for harassment due to the fact that there was a case just won by [the mother's] sister, who . . . the [State] had done the same thing.

The court then adjudicated the child a CINA, and it held the parents in contempt for failing to tell the court the location of the child. The parents were placed in jail. The court's written order followed, adjudicating the child CINA and stating it "considered the statements the parents had made and found that the child was in imminent risk of harm and should be removed." The next day, the parents surrendered the child to the Department, and he was placed in the temporary care of his aunt.

On November 4, 2014, a contested dispositional hearing was held, and the parents requested the child be returned to their care. The parents advised

the court they had set up the evaluations requested by the Department and gave the dates of their appointments. The case worker testified she had been concerned about the child's safety because both parents failed to respond to the Department's inquiries. She admitted she had never made contact with the father, but she believed the parents were in contact with each other. She testified the child had been seen by a doctor and found to be healthy, and there were no concerns about his health at that time. Nevertheless, she testified she did not believe the child could be returned to the parents' care at that time, stating she was concerned with the parents' mental health based upon the parents' behavior at the prior hearing. She wanted the mother to complete a substance abuse evaluation and the parents to complete mental health evaluations so the Department could determine if the child could be returned safely to their care.

The father testified he did not know what was going to happen at the prior adjudication hearing and came "just to see what it was about." When he got there, more occurred than he expected. He did not raise any challenges to his service of the petition in the case or to his lack of an attorney at the prior hearing. He testified he had scheduled a mental health evaluation and was willing to participate in services, but he requested the child be returned to the parents' care at that time.

The court subsequently entered its dispositional order continuing the child's placement with the aunt, concluding:

> [T]he participation of the parents in the case plan is important for the safety of the child, and at this time, the court wishes the results of the evaluations before the child is placed back in the care of his

parent. The court certainly believes that that can occur if the reports are positive for the safety of the child.

The father now appeals the juvenile court's adjudicatory and dispositional orders, asserting two procedural deficiencies occurred and that the CINA petition should be dismissed. The State notes the father did not raise these procedural issues before the juvenile court, and it maintains the father has therefore not preserved error for our review. The mother does not appeal. Our standard of review for CINA proceedings is de novo. *See In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).

## II. Discussion.

Parents are entitled to due process in a CINA proceeding. *See In re A.M.H.*, 516 N.W.2d 867, 870 (Iowa 1994). Nevertheless, parties to a child welfare hearing have an obligation to preserve error for appeal, even when the alleged error impacts their constitutional rights. *See In re K.C.*, 660 N.W.2d 29, 38 (Iowa 2003) (finding parents waived due process challenge because they "did not lodge an objection alerting the juvenile court to their complaints"). This requires that parties present their constitutional questions to the district court when the grounds for objection become apparent at the earliest opportunity. *See id.*; *In re C.M.*, 652 N.W.2d 204, 207 (Iowa 2002). "A party cannot preserve error for appeal by making only general reference to a constitutional provision in the district court and then seeking to develop the argument on appeal." *Taft v. Iowa Dist. Ct. ex rel. Linn Cnty.*, 828 N.W.2d 309, 322 (Iowa 2013). Additionally, the court must rule upon the constitutional issue to preserve error, in either its initial ruling or after the parties file a motion to enlarge or amend, requesting the court

to rule on the issue. *See State v. Mitchell*, 757 N.W.2d 431, 435 (Iowa 2008) (noting that when the district court fails to address a constitutional argument raised by the defendant, the defendant must "file a motion to enlarge the trial court's findings or in any other manner have the district court address th[e] issue").

Here, even assuming without deciding the father presented his constitutional claims to the juvenile court, the court did not rule on his constitutional challenges, nor did the father file a motion to enlarge or amend the court's rulings, even after he was represented by counsel. The father did not preserve error on his due process claims, and consequently, we do not consider them on appeal.

### III. Conclusion.

Because the father failed to preserve for our review his claims of error, we affirm the juvenile court's adjudicatory and dispositional orders.

**AFFIRMED.**

Doyle, J., dissents.

**DOYLE, J.** (dissenting)

Although I understand the majority's reasoning, I respectfully dissent. "The parent-child relationship is constitutionally protected," *State v. Iowa Dist. Ct. for Warren Cnty.*, 828 N.W.2d 607, 615 (Iowa 2013), and we often bypass our error preservation rules in child welfare proceedings because of the important interests at stake. *See, e.g.*, *In re Q.E.*, No. 14-0783, 2014 WL 3939918, at *5 n.2 (Iowa Ct. App. Aug. 13, 2014); *In re M.B.*, No. 14-0562, 2014 WL 2600364, at *1 (Iowa Ct. App. June 11, 2014); *In re K.C.*, No. 14-0253, 2014 WL 1999187, at *2 (Iowa Ct. App. May 14, 2014). Our supreme court has stated:

> Both the Bill of Rights and the Iowa Constitution provide no person shall be deprived of life, liberty, or property, without due process of law. U.S. Const. amends. V, XIV; Iowa Const. art. I, § 9. "[F]reedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment." *Santosky v. Kramer*, 455 U.S. 745, [753 (1982)]. The right of a parent to companionship, care, custody, and management of his or her children has been recognized as "far more precious . . . than property rights. . . ," *May v. Anderson*, 345 U.S. 528, [533 (1953)], and more significant and priceless than "liberties which derive merely from shifting economic arrangements." *Stanley v. Illinois*, 405 U.S. 645, [651 (1972)].

*In re A.M.H.*, 516 N.W.2d 867, 870 (Iowa 1994). For these important reasons, I would elect to bypass our error preservation rules and proceed to the merits of the father's claims. *See State v. Taylor*, 596 N.W.2d 55, 56 (Iowa 1999) (bypassing error preservation problem and proceeding to the merits of the issue raised on appeal).

It is true that the "State has a duty to assure that every child within its borders receives proper care and treatment, and must intercede when parents fail to provide it." *In re A.M.*, 856 N.W.2d 365, 376 (Iowa 2014) (internal citations

and quotation marks omitted). Nevertheless, "'that state intervention to terminate the relationship between [a parent] and [the] child,'" as well the State's initiation of child-in-need-of-assistance (CINA) proceedings, "must be accomplished by procedures meeting the requisites of the Due Process Clause" because the Due Process Clause protects a parent's interest in maintaining family integrity. *A.M.H.*, 516 N.W.2d at 870 (quoting *Lassiter v. Dept of Soc. Servs.*, 452 U.S. 18, 37 (1981) (Blackmun, J., dissenting)).

"'Notice of the hearing and an opportunity to be heard appropriate to the nature of the case is the most rudimentary demand of due process of law' in proceedings affecting parental rights to children." *In re S.P.*, 672 N.W.2d 842, 845 (Iowa 2003) (quoting *Stubbs v. Hammond*, 257 Iowa 1071, 135 N.W.2d 540, 543 (Iowa 1965)). To comply with the requirements of the Due Process Clause, notice

> must be given sufficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded, and it must set forth the alleged misconduct with particularity. . . . Notice at that time is not timely; and even if there were a conceivable purpose served by the deferral proposed by the court below, it would have to yield to the requirements that the child and his parents or guardian be notified, in writing, of the specific charge or factual allegations to be considered at the hearing, and that such written notice be given at the earliest practicable time, and in any event sufficiently in advance of the hearing to permit preparation.

*In re Hewitt*, 272 N.W.2d 852, 856 (Iowa 1978) (internal citations, alterations, and quotation marks omitted).

"Notice in child neglect and dependency proceedings is jurisdictional." *Id.* at 855. The CINA petition is to be served "in the same manner as for adjudicatory hearings in cases of juvenile delinquency as provided in section

232.37." Iowa Code § 232.88 (2013). Section 232.37, in turn, requires service "upon the known parents . . . of a child" and specifies that the service shall be "made personally by the sheriff" or, if the court determines personal service is impracticable, by certified mail. *Id.* § 232.37(1), (4). Furthermore, "service of summons or notice *shall* be made not less than five days before the time fixed for hearing." *Id.* § 232.37(4) (emphasis added). That did not happen here.

While the father had actual notice of the adjudicatory hearing,[1] he had one day's notice and did not have a full opportunity to prepare or seek the advice of an attorney. Even if the father had elected to complete the court-appointed counsel forms at the first hearing, a court-appointed attorney was not going to appear magically and represent him right then and there. The best course of action here would have been to continue the hearing for the father to have time to prepare and seek the advice of counsel.

Because the State did not properly serve the father, and he did not have adequate time to prepare for the adjudicatory hearing or seek the advice of counsel, I would dismiss the State's petition to adjudicate the child a CINA.[2]

---

[1] Actual knowledge of CINA proceeding does not remove formal requirement for service of process. *See In re J.R.H.*, No. 05-0610, 2005 WL 1398586, at *1-2 (Iowa App. June 15, 2005).

[2] Although finding the issue moot under the circumstances, we have previously concluded that amending a CINA petition, by adding a new ground for adjudication at the hearing, violated the mother's constitutional due process rights to notice. *See In re C.G.*, No. 10-0062, 2010 WL 2757206, at *6-7 (Iowa App. July 14, 2010) (petition for further review denied).