# IN THE COURT OF APPEALS OF IOWA

No. 15-0239
Filed October 28, 2015

**IN THE INTEREST OF O.P.,**
**Minor Child,**

**O.P., Minor Child,**
Appellant.

_____

Appeal from the Iowa District Court for Polk County, Rachel E. Seymour, District Associate Judge.

A juvenile appeals the revocation of a consent decree resulting in her adjudication for delinquent acts. **AFFIRMED.**

Christopher R. Kemp of Kemp & Sease, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney General, John P. Sarcone, County Attorney, and Christine Gonzalez, Assistant County Attorney, for appellee.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**TABOR, Judge.**

Fifteen-year-old O.P. appeals from the juvenile court's revocation of her consent decree and the resulting adjudication for the delinquent acts of operating a motor vehicle without the owner's consent and harassment in the third degree. She contends requiring her participation in juvenile drug court was an appropriate remedy short of the "lifelong consequences" of delinquency adjudication.

Because O.P. admittedly violated nearly all terms of the consent decree and only started to comply with the juvenile court's expectations after she was placed in detention, we do not find an abuse of discretion in the court's revocation of the consent decree.

## I.      Background Facts and Proceedings

On February 24, 2014, the State filed a delinquency petition against O.P., alleging she committed harassment in the first degree, in violation of Iowa Code sections 708.7(1)(b) and 708.7(2) (2013). The petition accused then fourteen-year-old O.P. of threatening to punch two teachers at Des Moines East High School "until they could no longer breathe and watch them lay there and suffer." A separately filed petition alleged O.P. operated her mother's car without consent in violation of Iowa Code section 714.7

On April 7, 2014, O.P. admitted committing harassment in the third degree and operating a motor vehicle without the owner's consent. A predisposition report by the Juvenile Court Officer (JCO) alleged O.P. had a "huge problem" with school attendance and tested positive for marijuana use. The JCO described O.P.'s behavior as "indicative of her attitude, her impulsiveness, her

lack of respect for others and her dislike for rules."  Nevertheless, the JCO "cautiously recommended" a consent decree under  Iowa Code section 232.46.

On May 30, 2014, the juvenile court granted the consent decree, which required O.P. to comply with the following terms and conditions:

> Obey all municipal, state and federal laws;
> Report to the JCO as required and abide by all conditions set by the JCO;
> Obey all rules of the parental or custodial home;
> Attend school daily, including summer school, give best efforts at school, and obey all rules;
> Abstain from use of tobacco, alcohol, illegal drug, synthetic drugs & drugs prescribed for other persons;
> Provide drug screens upon request;
> Refrain from the possession of firearms or dangerous/offensive weapons;
> Abide by a curfew as approved by Juvenile Court Services;
> Complete substance abuse recommendations, including aftercare;
> Cooperate with tracking and monitoring at JCO discretion;
> Participate in a pro-social activity while on probation.

The consent decree informed O.P. that violation of these conditions could result in detention, revocation of the decree, and delinquency adjudication.

On September 19, 2014, the JCO filed an application to revoke the consent decree, alleging O.P. had not been attending school regularly, had not followed rules at home, had not met curfew, and had not complied with tracking requirements.  When O.P. failed to show up for the October 6 revocation hearing, the court issued a bench warrant for her arrest.  In an application for detention filed on December 9, 2014, the State alleged that O.P. had been a "runaway from her home since October 6, 2014" and had tested positive for illegal drugs.

On December 17, 2014, the State filed an application to revoke the consent decree.  The application alleged between October 6 and December 10,

O.P. failed to maintain contact with the JCO, failed to attend school, used illegal drugs, and failed to provide drug screens. The application also alleged that O.P. had committed two additional delinquent acts—theft in the fifth degree and providing false identification. The State's application also noted that on December 17 O.P. was accepted in juvenile drug court. An order entered on December 19 provided for O.P.'s release from detention on December 22 and commencement of day treatment at Cornerstone Recovery.

On January 23, 2015, the JCO filed an application seeking to rescind the request for revocation. The application noted O.P. had been accepted into drug court, which was "a very appropriate solution" and allowed her another opportunity to complete the consent decree.

The county attorney asked the juvenile court to go forward with the revocation, despite the JCO's change of heart. At the January 23, 2015, hearing, O.P. stipulated to her violation of the terms and conditions of the consent decree. But her counsel argued she had "completely turned herself around in the last month and a half." Counsel argued that given her acceptance into drug court, she should be "afforded the opportunity to prove that should she meet all these expectations, she should be able to keep her consent decree."

The juvenile court highlighted its involvement with O.P.'s case since February 2014. The court noted the JCO had "cautiously" recommended the consent decree. But by September 2014, O.P. "had violated most of the Court's expectations." By October 2014, it was "clear that [O.P.] had also engaged in ongoing criminal activity" including illegal drug use and theft. The court

summarized: "In essence for the last three to four weeks [O.P.] has been compliant with expectations, while she failed to comply with the Court's expectations for the prior ten months." The court also noted O.P.'s demeanor during the January 2015 hearing: "There were times when the officer was testifying and the child was smirking—seemed to find that some of his testimony was amusing or funny." The court concluded "due to the numerous violations of her consent decree, the nature of those violations which included new charges and absconding from her home for several months, and her demeanor during the proceedings, her prior Consent Decree should be revoked."

The court adjudicated O.P. as delinquent for the acts to which she previously admitted. She was ordered to continue on probation on terms as established by the juvenile drug court. O.P. now appeals.

## II.     Standard of Review

Our review of juvenile court's decisions regarding consent decrees is de novo, but only to the extent of examining all the evidence to determine whether the juvenile court abused its discretion. *See In Interest of J.J.A.*, 580 N.W.2d 731, 737 (Iowa 1998). We will find an abuse of discretion only if the juvenile court's decision rests on clearly untenable or unreasonable grounds. *In re B.A.*, 737 N.W.2d 665, 667-68 (Iowa Ct. App. 2007).

## III.    Analysis of Revocation Decision

On appeal, O.P. asks us to reverse the juvenile court's revocation of the consent decree because the adjudication for her delinquent acts does not promise to reform her behavior and carries long-term consequences. O.P.

contends requiring her participation in drug court was an appropriate remedy for her noncompliance with the consent decree.

The State counters that the juvenile court was reasonable in its conclusion that O.P.'s short period of improved behavior did not outweigh her entire history of defiance against the terms of the consent decree.

Consent decrees are governed by Iowa Code section 232.46(1), which provides:

> At any time after the filing of a petition and prior to entry of an order of adjudication pursuant to section 232.47, the court may suspend the proceedings on motion of the county attorney or the child's counsel, enter a consent decree, and continue the case under terms and conditions established by the court.

A child's failure to comply with the terms and conditions may result in the child being "held accountable as if the consent decree had never been entered." Iowa Code § 232.46(5). Consent decrees in juvenile court are similar to deferred judgments in the criminal context. *See State v. Iowa Dist. Ct.*, 828 N.W.2d 607, 630 (Iowa 2013) (Appel, J., dissenting). As with deferred judgments and suspended sentences, the granting of a consent decree is a "matter of grace, favor, or forbearance" not a matter of right. *Cf. State v. Noonan*, 246 N.W.2d 236, 237 (Iowa 1976).

The juvenile court provided O.P. with the opportunity to avoid delinquency adjudication by entering into a consent decree. Instead of taking advantage of that opportunity extended to her and avoiding the long-term consequences discussed by her attorney, O.P. violated almost all of the terms and conditions of the decree, including committing additional delinquent acts. After committing

those acts, she failed to appear for the scheduled revocation hearing and was "on the run" for two months.

At the January 2015 hearing, the juvenile court considered the JCO's recommendation that O.P. be given more time to meet the conditions of the consent agreement under the more intensive supervision required by juvenile drug court. But the JCO also testified O.P.'s participation in drug court did not prevent her from having the consent decree revoked.

The juvenile court reached the following conclusion:

> [O.P.] has violated virtually every single term and condition set by this Court, and she has done it throughout her time while she had that consent decree. The Court agrees she has some consequences by being placed in the drug court program, but, quite frankly, those are less significant than she would have faced if she would have remained under this Court's jurisdiction because I would have revoked her and sent her to placement.

After examining all of the evidence in the juvenile court record, we cannot conclude the juvenile court's decision to revoke the consent decree constituted an abuse of discretion. The juvenile court gave sound reasons for holding O.P. accountable for her protracted defiance of the terms of the consent decree. The juvenile court was justified in questioning the sincerity of O.P.'s brief compliance after she was placed in detention, especially given her disrespectful demeanor observed by the court at the January hearing. Going forward with the delinquency adjudication was reasonable on this record.

**AFFIRMED.**